**STATE of Iowa, Plaintiff-Appellee,**

v.

**Donald Joe WATT,
Defendant-Appellant.**

No. 85–107.

Court of Appeals of Iowa.

April 23, 1986.

Philip F. Miller, Amy Christensen Couch, and Margaret LaMarch, Des Moines, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Elizabeth E. Ciebell, Asst. Atty. Gen., and William Thomas, Asst. Co. Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., and SNELL and SACKETT, JJ.

SNELL, Judge.

On November 7, 1983, Defendant Donald Joe Watt was charged with first-degree theft. Specifically, the charge in the trial information reads that Watt "did aid and abet another person and/or to take, destroy, conceal or dispose of property in which Des Moines Postal Credit Union ... had a security interest, to wit: 1976 Black Corvette VIN # 173FL6S408370, having a value in excess of $5,000 with the intent to defraud the secured party."

At trial, the following facts evolved: In August 1983, John Tate, a Highway Patrol garage mechanic, noticed an ad in the Des Moines Sunday paper for Corvette parts for sale at Joe's Auto Service. Tate called and offered to buy the whole car for his personal use, but was told that the party wanted to sell only by parts. Tate became suspicious and contacted Lt. Lewis of the Highway Patrol Vehicle Theft Division. Lewis assigned Jack Bensley to the case, and Bensley accompanied Tate to Joe's Auto Service on August 11, 1983. In examining the Corvette, both men noted several parts were missing from the vehicle. Tate again made an offer to buy the whole car and a mechanic told him he would take $2,500 no questions asked. Bensley copied down the Corvette's VIN, which he relayed to Lt. Lewis after they left the garage. Later that afternoon, Tate, accompanied by Troopers Bensley and Battani returned to Joe's Auto Service where they talked with Watt regarding how he had obtained the Corvette. Watt told them that he purchased the vehicle from a Marshall Garri-

son for $4,500 and the paperwork was in the possession of his attorney, Charles Turner. Watt did not then have the title, but Garrison was supposed to deliver it.

From the partial VIN supplied to him, Lt. Lewis determined that the Corvette was owned by Marshall Garrison and Des Moines Postal Credit Union had a lien on the vehicle. The assistant manager for Des Moines Postal Credit Union confirmed that there was a lien on the Corvette. The vehicle was thereafter seized by the police. Two months later, Watt, through his attorney, Robert White, delivered a receipt to Trooper Battani showing he had purchased the vehicle from Marshall Garrison. This receipt provided as follows:

The time, 11:40, 16th of June, 82. "I, Marshall J. Garrison, on the 16th day of June, 1982 give total possession of one 1976 Corvette bearing serial number of 1Z37LS5408370 to Joe Watt, who from this day and time is totally responsible for any damage or liability resulting or involved by this automobile. Seller: Marshall Garrison. Buyer: Joe Watt. Witness: Rob Bierma. Witness: Albert Garrison. Release from my lien holder will be made as soon as possible. Marshall J. Garrison sold for $4,800, which is paid in full." Initialed M.G.

Trooper Battani learned that Watt had contacted the Postal Credit Union sometime after the purchase, knew there was a lien on the Corvette, and tried to make an agreement to purchase the car. Watt testified that he had been given a receipt by the owner of the Corvette that indicated that any liens against the vehicle be cleared up by the seller and a clear title would be transferred to him within five days. Watt stated that he did not discover the lien until approximately three months later when he began parting out the Corvette. He tried to make a settlement with the Postal Credit Union, but was unable to do so. Watt related the frustrations he had in trying to obtain a clear title from Garrison, including contacting a lawyer, Charles Turner. Watt stated he was not intending to defraud the lienholder, but was merely parting out the car to repay Postal Credit their money and get back some of his investment. Rob

Bierma was the only other witness for the defense and he related only the purchase of the Corvette, his witnessing of the receipt, and the fact that Watt paid $4,800 in cash for the vehicle.

The jury found Watt guilty of theft in the first degree. Watt filed a Motion in Arrest of Judgment and for New Trial alleging that the trial court erred in denying his pretrial request for a continuance because his counsel was not adequately prepared for trial. The motion was denied.

Watt was given a deferred judgment, placed on three years probation, and ordered to pay restitution and perform community service. Watt attempted to appeal this decision but the appeal was dismissed by the Iowa Supreme Court on the ground that an order deferring judgment is not appealable as a matter of right.

In December of 1984, a probation violation report on Watt was filed. After a hearing, Watt's deferred sentence was rescinded. Watt was sentenced to a term not to exceed ten years.

On appeal, Watt asserts that: (1) the trial court erred in overruling his pretrial motion for a continuance; (2) he was denied effective assistance of counsel because his attorney was not properly prepared for trial; and (3) the trial court erred in denying his motion in arrest of judgment and for new trial.

**Motion for Continuance.** Attorney Robert White appeared on Watt's behalf at his arraignment on November 15, 1983. Pretrial conference was set for December 8, 1983, and trial for January 16, 1984. At the pretrial conference, White informally presented Watt's request for a continuance of the trial date to the assistant county attorney and Judge Lavorato. Neither were in favor of a continuance and White agreed that no grounds for a continuance then existed. On January 14, 1984, Watt again expressed his desire for a continuance. Immediately prior to trial, White orally moved for a continuance on the grounds of lack of communication between White and Watt and Watt's desire for new counsel. The trial court denied Watt's motion stating:

Mr. White, you left it with me by your motion for continuance now, and when I talked with you fellows earlier, I had forgotten that we do have—there has been a rule issued by our Chief Judge; I think it was signed by Judge Lavorato, who is the Chief Judge, but it may have been signed by Judge Denato, although it runs in my mind it is Lavorato, that says any continuances in a criminal case will be, all will be handled by the chief criminal judge, who is Denato. And since he has ruled that there will be no continuance in this case, that's also my ruling. There will be no continuance. We will try the case today.

Watt now argues that his motion for continuance should have been granted on the ground of lack of preparation by his trial counsel caused by their inability to communicate.

Iowa R.Civ.Pro. 183(a) (applicable to criminal cases pursuant to Iowa Code section 780.2) provides:

> A continuance may be allowed for any cause not growing out of the fault or negligence of the applicant, which satisfies the court that substantial justice will be more nearly obtained.

It is well-established that trial courts are accorded broad discretion in ruling on a motion for continuance. *State v. Ware*, 338 N.W.2d 707, 714 (Iowa 1983); *State v. Wright*, 274 N.W.2d 307, 310 (Iowa 1979). The trial court's ruling will be disturbed only where it appears that the court has abused its discretion. *State v. McGinnis*, 243 N.W.2d 583, 586 (Iowa 1976). In criminal cases, motions for continuance are discouraged. "A motion for continuance shall not be granted except upon a showing of good and compelling cause." Iowa R.Crim. Pro. 8.1(2). Furthermore, continuances will not be granted for lack of defense preparation in the absence of a showing of good cause. *State v. Kyle*, 271 N.W.2d 689, 691 (Iowa 1978); *State v. Youngbear*, 229 N.W.2d 728, 734 (Iowa 1975). "Whether in any case enough time has been afforded for consultation, investigation for witnesses and preparation of the law and facts depends on the circumstances of the case including the complexity of the factual issues and the legal principles involved." *Orcutt v. State*, 173 N.W.2d 66, 71 (Iowa 1969).

Watt testified at the posttrial hearing on his motions that he only conferred with his trial counsel regarding his case for about an hour and a half between November 15, 1983, and January 16, 1984. Attorney White testified that he could not recall how many times he met with Watt. White stated that he attempted to contact Watt four to six times to no avail, and Watt failed to keep scheduled appointments about three times. Watt contends that White's lack of preparation was evident at trial because no character witnesses were called on his behalf, Attorney Charles Turner was not called to explain the work he had done to attempt to clear the title to the Corvette for Watt, and White failed to consider the possibility that he should be a witness to testify to the things he did to attempt to clear the title.

We find that Watt's motion for continuance was properly denied by the trial court. This is not a situation where trial counsel had insufficient time to prepare for trial due to late appointment. *See Orcutt*, 173 N.W.2d at 71 (belated appointment of counsel rendered his services ineffective). White began representing Watt in this matter at his arraignment two months prior to trial. This gave trial counsel ample time to interview Watt and investigate possible defenses. Furthermore, no affidavits accompanied the motion for continuance indicating what specific evidence or witnesses were needed but had not been procured despite due diligence in accordance with Iowa R.Civ.Pro. 183(b) (all motions for continuance based on absence of evidence must be supported by affidavit). White did not even inform the court that he needed more time to locate and interview further witnesses. The fact that Watt failed to appear for scheduled appointments with his counsel also indicates that any claimed "lack of communication" was of Watt's own making and does not establish "good excuse" for lack of defense preparation. We conclude that the trial court acted well within its proper range of discretion in denying Watt's request for a continuance.

■ **Ineffective Assistance.** Watt also contends that he was denied effective assistance of counsel because his attorney White was not properly prepared for trial. Watt argues that White failed to offer character evidence (testimony of Watt's insurance agent, his bookkeeper, and another auto dealer) to establish Watt's propensity for telling the truth and conducting his business honestly. He also contends that Attorney Turner and White himself should have been called to testify regarding the preparation of a lawsuit against Garrison in an attempt to clear the Corvette's title.

When a defendant relies on a specific omission to prove ineffective assistance of counsel, two conditions must be demonstrated:

(1) counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed by the sixth amendment, and

(2) the deficient performance so prejudiced the defense as to deprive the defendant of a fair trial.

*State v. Losee*, 354 N.W.2d 239, 243 (Iowa 1984) (citing *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)).

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694–695, 104 S.Ct. at 2068, 80 L.Ed.2d at 698 (1984). The defendant must satisfy this burden by a preponderance of the evidence and rebut the presumption of counsel's competence. *Meier v. State*, 337 N.W.2d 204, 206 (Iowa 1983).

When lack of preparation is asserted as the basis of denial of proper representation, the entire record must be examined and the totality of the circumstances evaluated to determine counsel's effectiveness * * * [citing authorities]. The test is whether in all the circumstances counsel's performance was within the range of normal competency. *Moore v. United States*, 432 F.2d 730, 737 (3 Cir.

1970). To warrant finding a deprivation of due process, such circumstances must include "an affirmative factual basis demonstrating counsel's inadequacy of representation." *In re Parker*, 423 F.2d 1021, 1025 (8 Cir.1970).

*State v. McCray*, 231 N.W.2d 579, 581 (Iowa 1975). In deciding whether trial counsel's performance was deficient, we require more than a showing that trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984).

In this case, we will not condemn White's judgment in choosing not to call additional witnesses on his client's behalf. Watt admitted that he sold the Corvette parts with the knowledge that there was a lien on the Corvette and without informing the lienholder. Neither Turner's, nor White's testimony as to attempts to obtain clear title would have justified Watt's actions in parting out the vehicle. Moreover, although character witnesses may have supported Watt's credibility, their testimony would not refute the fact that Watt was selling what he knew did not belong to him. Consequently, Watt has not met his burden to show that he was prejudiced by his trial counsel's failure to call additional witnesses.

**Motion for New Trial.** Watt relies on Iowa R.Crim.Pro. 23(2)(b)9 which provides that the court may grant a new trial "when from any other cause the defendant has not received a fair and impartial trial." It is well established that trial courts are vested with broad discretion in granting or denying motions for new trial based on fair trial considerations. *State v. LaDouceur*, 366 N.W.2d 174, 178 (Iowa 1985).

Watt has failed to demonstrate that he did not receive a fair and impartial trial. The trial court properly denied his motion in arrest of judgment and for new trial.

AFFIRMED.