**STATE of Iowa, Appellee,**

v.

**Clair BESSENECKER, Appellant.**

No. 87–04.

Supreme Court of Iowa.

April 15, 1987.

Chris Odell of Citizen Advocate Office, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., James Smith, Co. Atty., and Harlan Lemon, Asst. Co. Atty., for appellee.

SCHULTZ, Justice.

This appeal presents the question whether a prosecuting county attorney may use the criminal history data (rap sheets) of prospective jurors during the jury selection process. The district court held that this use of rap sheets was permissible under Iowa Code sections 692.2(1), (3) and 331.756 (1985). We reverse and remand.

The facts are essentially uncontroverted. Defendant Clair Bessenecker was charged with second-degree theft in violation of Iowa Code sections 714.1(1) and 714.2(2). Prior to trial, defendant challenged the county attorney's proposed use of rap sheets of all prospective jurors during the jury selection process. The following stipulations were entered into by the parties:

1. That the Polk County Attorney receives criminal history data on prospective jurors prior to the beginning of their jury terms.

2. That the compiled criminal history data is not limited to felony convictions, which would be a valid basis for challenge for cause under Iowa R.Crim.P. 17(5)(a).

3. That the Polk County Attorney's Office is a criminal justice agency within the meaning of Iowa Code Section 692.-1(10).

4. That the Citizen Advocate Office (and other defense counsel) is not a "criminal justice agency" and is not authorized to receive criminal history data.

5. That each juror is required to complete a "juror information form" ... prior to the beginning of his term.

6. That the completed juror information forms are provided to both counsel for State and defense immediately prior to jury selection in each trial.

7. That use of the criminal history data is an optional, personal choice of each assistant county attorney for trial purposes.

8. That the criminal history data is used to eliminate jurors from the panel for potential bias against the State.

9. That the Citizen Advocate Office (and other defense counsel) is limited in jurors' criminal history data to the completed juror information form and voir dire in open court.

We accept this factual basis for our decision but note that the parties' stipulation does not limit our authority to interpret the law. *See State v. Aumann*, 236 N.W.2d 320, 322 (Iowa 1975) ("Stipulations as to the law do not settle for the court what the law is....").

Iowa Code chapter 692 provides regulations on the compilation, dissemination and redissemination of criminal history data. Such data includes arrest, conviction, disposition and correctional information. Iowa Code § 692.1(3). The disagreement of the parties is based upon their differing interpretations of Iowa Code section 692.2(3)(a), which restricts the dissemination of the rap

sheet of an individual to instances in which "[t]he data is for official purposes in connection with prescribed duties...." It is conceded that the office of county attorney is a criminal justice agency entitled to obtain rap sheets. *See* Iowa Code § 692.-2(1)(a). What is disputed is whether obtaining rap sheets on prospective jurors is within the statutory limitation of "official purposes in connection with the prescribed duties" of the county attorney.

The trial court concluded that the use of jurors' rap sheets for jury selection purposes falls within the county attorney's "prescribed duties" and does not violate defendant's constitutional rights. Attacking the trial court's construction of the statute, defendant urges that investigation of jurors' criminal backgrounds is not a prescribed duty within the meaning of the statute. He asserts that the use of such data "stands in stark contrast to the obvious intent of chapter 692." Defendant further claims that the court's construction of the statute violates defendant's constitutional rights to due process and equal protection. In addition to countering defendant's claims, the State challenges defendant's standing to assert the rights of the jurors.

■ *I. Standing.* Defendant has standing to contest the county attorney's use of criminal history data during jury selection. Any criminal defendant has an important personal stake in selecting a fair jury, and thus in obtaining relevant information about the jurors and seeking to be on an equal footing with the prosecution in that regard. *See Elview Constr. Co. v. North Scott Community School Dist.*, 373 N.W.2d 138, 141 (Iowa 1985) (Standing is dependent upon a party having "a sufficient personal stake in the outcome of a controversy to insure that the dispute is presented in a concrete adversary context.").

*II. Limitations on use of rap sheets.* Defendant claims that the release of rap sheets of prospective jurors to the county attorney violates statutory authority and also defendant's constitutional rights. We address the statutory issue, as well as issues of fairness and judicial control that arise out of the constitutional claim.

■ *A. Statutory limitations.* Determining whether obtaining rap sheets for jury selection purposes is a "prescribed duty" of the county attorney requires an interpretation of section 692.2(3)(a). The correct interpretation of a statute is a question of law for the court to decide. *American States Ins. Co. v. Estate of Tollari*, 362 N.W.2d 519, 521 (Iowa 1985).

■ The words used in a statute should be given their ordinary meaning, absent a legislative definition or a particular and appropriate meaning in law. *Good v. Iowa Civil Rights Comm'n*, 368 N.W.2d 151, 155 (Iowa 1985). The ordinary and common meaning of the term "prescribe" indicates the laying down of an authoritative rule or direction. *See Edelman v. State*, 62 Wis.2d 613, 620, 215 N.W.2d 386, 389 (1974).

An examination of the statutory duties of the county attorney does not disclose an authoritative rule or direction to obtain rap sheets on prospective jurors. Iowa Code section 331.756 details eighty-five duties of a county attorney, but none specifies or requires that the county attorney investigate jurors or their criminal histories. On the other hand, the county attorney has the express duty to enforce violations of the law and to prosecute such violations in the name of the state. *Id.* § 331.756(1). Impliedly the county attorney has a duty to perform this function competently. Also, it is a recognized practice for an attorney to make investigations of prospective jurors so that challenges can be utilized intelligently.[1] We believe that performing an implied duty or following a common practice does not rise to the level of complying with an authoritative rule or direction. Consequently, we must turn to other princi-

---

1. We do not disapprove of this practice as long as the jurors are not made aware of this investigation. *See* Standards Relating to the Prosecution Function and the Defense Function § 5.3 comment b (Approved Draft 1971) (investigations to be carried out so as to avoid harassment of prospective jurors and creation of bias).

ples of construction to determine whether the county attorney is authorized to obtain and use this data.

In construing statutes we must give effect to the meaning intended by the legislature. In so doing we properly may consider the objects sought to be attained and the circumstances under which the statute was enacted. *Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 376 N.W.2d 878, 881 (Iowa 1985). We seek a reasonable interpretation that will best effect the purpose of the statute and avoid an absurd result. *In re N.H.*, 383 N.W.2d 570, 572 (Iowa 1986). When more than one statute is pertinent to the inquiry, we consider the statutes together in an attempt to harmonize them. *Id.*

In chapter 692 as a whole, the legislature has set a tone of caution against the dissemination of criminal history data except as specified. The legislature restricted the distribution of such data to an exclusive group of agencies and departments, and then provided for its release only under specified conditions. Iowa Code § 692.2. A recipient of such information is prohibited from redisseminating this information except under specified and detailed conditions. *Id.* § 692.3. Both a civil remedy and a criminal penalty are provided for violations of the rules of this chapter. *Id.* §§ 692.6–.7. The agency is charged with adopting rules designed to assure confidentiality in the exchange of criminal history data. *Id.* § 692.10. Special rules apply to information stored in computers. *Id.* § 692.12.

The overall tone of caution set by the legislature against the dissemination of criminal history data, except as carefully specified, indicates a legislative purpose of protection of the individual against unwarranted circulation of his or her rap sheet. The question remains whether the rap sheets of prospective jurors are meant to fall outside this wall of legislative protection.

Citizens are chosen at random and unless disqualified have a statutory duty to serve as jurors when selected. Iowa Code § 607.1. Jurors act as participants with the court in the adjudicatory process. The summons to jury duty does not cause them to be suspected of crimes nor have they applied for sensitive jobs requiring background checks. *See Feeney v. Scott County*, 290 N.W.2d 885, 889–90 (Iowa 1980) (no violation of chapter 692 where sheriff obtained police intelligence data on job applicant pursuant to statutory duty to investigate applicants).

While a county attorney obviously has an interest in learning something of the backgrounds of prospective jurors, it would be unfair to allow the county attorney unfettered discretion to obtain rap sheets, which may contain unproved charges, on each prospective juror. In determining legislative intent, we assume the legislature considered and intended fairness. The legislature also was obviously concerned about the security of criminal data. While we do not mean to suggest that the attorneys involved would improperly disclose confidential information to others, the possibility of inadvertent disclosure increases with the number of persons who obtain the information for legitimate purposes. We know that the county attorney has many assistants and other staff members and we assume that this information would be legitimately available to these people as a part of their official duties. As we later point out fairness requires that we make the same material available to defense counsel. The possibility of a breach of security with such broad dissemination of this information is apparent.

The usefulness of such data is not overwhelming when we consider the other sources from which it might be obtained. Jury questionnaires and voir dire examinations may be utilized. Fear of retaliation by jurors who might be offended by counsel's questions may be alleviated by requesting that the trial court assume an active role in the examination of prospective jurors. We strongly approve of the trial court's participation in voir dire examination in a manner that will aid counsel and also avoid embarrassing individual prospective jurors.

We conclude that an interpretation of section 692.2(3)(a) that precludes the county attorney from obtaining the rap sheets of all prospective jurors would most nearly meet the purposes and objectives of this section. We believe that this interpretation provides a sensible and fair result.

This is not to say that a county attorney may never have access to rap sheets for use in jury selection. We believe the statute would permit the county attorney to obtain a rap sheet on an individual only when there is a reasonable basis for believing that the rap sheet may contain information that is pertinent to the individual's selection as a juror and that is unlikely to be disclosed through voir dire or through juror questionnaires. In such special cases we believe that the county attorney would be acting under a "prescribed duty," as required by the statute. Because the court has a special interest in and a duty to protect the rights of jurors, we believe the court should in its adjudicative capacity determine whether a reasonable basis exists for obtaining the rap sheet of a particular juror. See Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 512, 104 S.Ct. 819, 825, 78 L.Ed.2d 629, 639 (1984) ("To preserve fairness and at the same time protect legitimate privacy, a trial judge must at all times maintain control of the process of jury selection...."). The county attorney must, therefore, obtain a court order allowing the acquisition and use of the rap sheet; for reasons stated later, the information also must be made available to the defendant.

*B. Considerations of fairness and judicial control.* As we have held the county attorney should be allowed limited access to rap sheets of prospective jurors on an individual basis, we must address defendant's claim for equal access. While a defendant may not have exactly the same motive for wanting access to this information, a defendant obviously seeks to obtain the same amount and type of information that the State possesses in exercising peremptory challenges.

Other jurisdictions have addressed this problem in contexts other than a statutory prohibition against dissemination. In *People v. Murtishaw*, 29 Cal.3d 733, 631 P.2d 446, 175 Cal.Rptr. 738 (1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 464 (1982), the trial court was granted discretionary authority to permit a defense attorney access to jury records and reports of investigations that were available to the prosecution. It was reasoned that the prosecutor believed the advantage of the jury investigation justified the expense and that to disallow the defendant such material would reflect a pattern of inequality and unfairness in the criminal process. *Id.* at 767, 631 P.2d at 465, 175 Cal.Rptr. at 757. Interestingly, the California court relied upon its supervisory authority over criminal procedure to arrive at this result. Massachusetts has also invoked its general supervisory power over the trial courts to hold that information available to a prosecutor from police officers who have gathered information about prospective jurors should also be available to the defendant in order to assure the defendant a fair trial. *Commonwealth v. Smith*, 350 Mass. 600, 603, 215 N.E.2d 897, 901 (1966). The Colorado court has held that police records normally are not subject to public record disclosure, but when records of prospective jurors are given to the prosecutor such records must also be given to the public defender. *Lasavio v. Mayber*, 178 Colo. 184, 188–90, 496 P.2d 1032, 1034–35 (1972). Other jurisdictions have not required the State to provide the defendant with all of the information in its possession concerning the prospective jurors. *See, e.g., Monahan v. State*, 294 So.2d 401, 402 (Fla.Dist. Ct.App.1974); *State v. Jackson*, 450 So.2d 621, 628 (La.1984); *Martin v. State*, 577 S.W.2d 490, 491 (Tex.Crim.App.1979).

We agree with the reasoning of those courts that generally have allowed defendants equal access to jurors' rap sheets obtained by the county attorney. We believe that considerations of fairness and judicial control over the jury selection process requires this result. While it is conceivable that certain circumstances may require a different result, we are confident that our trial courts can balance the inter-

ests involved and fashion appropriate relief.

In summary, we hold that the legislature did not intend that the county attorney have access to the rap sheets of all prospective jurors for the purpose of jury selection; the trial court erred in overruling the defendant's motion. The county attorney may obtain a court order allowing acquisition and use of the rap sheet of a particular prospective juror only upon a showing of reasonable basis for believing that the rap sheet may contain information that is pertinent to the individual's selection as a juror and unlikely to be otherwise disclosed. If a rap sheet is thus acquired by court order, it must also be made available to the defendant unless good cause is shown to the contrary.

The county attorney in this case is ordered to destroy all such material previously acquired and all notes made therefrom. On remand the trial court should inquire into the knowledge the prosecutor may have with regard to individuals on a particular panel in deciding whether or not the panel must be replaced.

REVERSED AND REMANDED.

All Justices concur except WOLLE, HARRIS, and LARSON, JJ., who dissent.

WOLLE, Justice (dissenting).

I have no quarrel with much of the majority opinion, agreeing that defendant has standing and that counsel for criminal defendants should ordinarily have equal access to the criminal history data the county attorney obtains for jury selection purposes. I dissent, however, from division II.A. in which the majority narrowly restricts use of that data to "special cases" of individual prospective jurors. Contrary to the majority I read the controlling Iowa statutes to provide the trial court discretion to allow the county attorney to request, obtain, and then share with defense counsel criminal history data on all prospective jurors. This reading is faithful to the language of the statutes and assures counsel full access to relevant information needed for selection of a fair and impartial trial jury in criminal cases.

The statutory scheme is quite simple. A county attorney is a "criminal justice agency" authorized to obtain criminal history data under the conditions set forth in Iowa Code chapter 692. *See* Iowa Code § 692.-1(10) (1985). Iowa Code section 692.2(3)(a) provides in pertinent part that the county attorney may receive and use the data on persons listed by name when the "[t]he data is for official purposes in connection with prescribed duties...." Finally, Iowa Code section 331.756 lists in eighty-five separately numbered paragraphs the duties of the county attorney, but the first of those paragraphs states:

The county attorney shall:

1. Diligently enforce or cause to be enforced in the county, state laws and county ordinances, violations of which may be commenced or prosecuted in the name of the state, county, or as county attorney, except as otherwise provided.

These statutes, taken together, provide a solid basis for the district court's conclusion in this case that "obtaining and utilization of said information falls within the duties imposed upon the county attorney."

We should give the express term "prosecuted" in section 331.756(1) its ordinary meaning. *See Good v. Iowa Civil Rights Comm'n*, 368 N.W.2d 151, 155 (Iowa 1985); Iowa Code § 4.1(2). "Prosecute" is a general term meaning "to proceed against a person criminally." Black's Law Dictionary 1099 (5th ed. 1979). To prosecute violations of laws is to perform a variety of unnamed functions. The statutory description of the duties of a county attorney in Iowa Code section 331.756(1) "vests in the county attorney a broad discretion as to the manner in and the means by which the laws of the state shall be enforced." 1940 Op. Iowa Att'y Gen. 5. Certainly the selection of a jury "composed of persons qualified and competent to judge and determine the facts in issue without bias, prejudice or partiality," *Elkin v. Johnson*, 260 Iowa 46, 49–50, 148 N.W.2d 442, 444 (1967), is one of those functions embraced within the statutory directive that the county attorney "en-

force" laws, violations of which may be "prosecuted." While the investigation of jurors' criminal backgrounds is not itself a duty explicitly prescribed by statute, that task certainly is an activity a county attorney is expected to perform in carrying out the prosecutorial duties of the office.

I agree with defendant that the legislature in drafting Iowa Code chapter 692 took care to preserve the confidential nature of criminal history data. In sections 692.2 and 692.3 concerning dissemination and redissemination, however, the legislature exercised its prerogative to carve out exceptions to that general policy of confidentiality. To me it is clear the section 692.2 exception permits the county attorney to obtain and use criminal history data pertaining to the list of persons who may become trial jurors in a given criminal case. Likewise the section 692.3 exception permits the court to require redissemination of the same data to defense counsel.

No statutory language supports the majority's interpretation that narrowly limits the use of rap sheets during jury selection to special cases involving individual jurors. No such special-case rule is prescribed by statute, described by rule, or provided for in any other authority. If use of any data turns on the extent to which a county attorney's duty is explicitly prescribed, the majority's special-case use would itself be proscribed because it certainly is not mentioned in our statutes.

Moreover, the special-case interpretation will probably serve no practical purpose. To satisfy the test set forth in the majority opinion, the county attorney would have to show "a reasonable basis for believing that the rap sheet may contain information that is pertinent to the individual's selection as a juror and that is unlikely to be disclosed through voir dire or through juror questionnaires." Perhaps the county attorney would be able to make such a showing in a county with a small population where the county attorney or other law enforcement officers would likely be familiar with most prospective jurors and know whether one or another has not been fully candid in answering the questionnaire or responding during voir dire examination. That familiarity itself might well make use of rap sheets in those counties entirely unnecessary. It is in the counties with larger populations, however, that the criminal history data would be most valuable to the county attorney because law enforcement officers would have little familiarity with prospective jurors. But how, under those circumstances, would the county attorney be able to make the necessary special-case showing? Ironically, the majority opinion seems to deprive counsel of valuable rap sheet information in those very circumstances where it would be most useful.

I would affirm, believing the district court correctly denied defendant's motion to strike the jury pool and properly refused to prohibit the State from using criminal history data in jury selection. I would not reach defendant's constitutional arguments, because I agree with the majority that defendant is entitled to have equal access to the criminal history data the county attorney obtains for use in jury selection.

HARRIS and LARSON, JJ., join this dissent.