**STATE of Iowa, Plaintiff–Appellee,**

v.

**Merle Leroy KNERR,
Defendant–Appellant.**

No. 87–652.

Court of Appeals of Iowa.

May 31, 1988.

Douglas L. Tindal of Shearer & Tindal, Washington, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., Gerald N. Partridge, Co. Atty., and Barbara A. Edmondson, Asst. Co. Atty., for plaintiff-appellee.

Heard by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

Defendant, Merle LeRoy Knerr, appeals his conviction, after a jury trial, of second-degree burglary. *See* Iowa Code §§ 713.-1, .5 (1985). Defendant contends (1) the trial court abused its discretion in overruling his motion to dismiss for lack of speedy indictment, and (2) the trial court erred in overruling his motion for new trial based

upon the State's use of handwriting analysis of juror questionnaires. We affirm.

## I.

 Defendant argues the trial court abused its discretion in overruling his motion to dismiss for lack of speedy indictment. Iowa Rule of Criminal Procedure 27(2)(a) provides the court must order the prosecution to be dismissed if an indictment is not found against the defendant within forty-five days of the defendant's arrest. The term "indictment" includes trial informations. Iowa R.Crim.P. 5(5).

The undisputed facts in this case are the county attorney delivered the trial information to the clerk of court on Friday, October 24, 1986, which was the forty-fifth day following defendant's arrest. Accompanying the trial information was an order setting the date for defendant's arraignment and ordering the clerk of court to mail or deliver copies of the trial information and order to defendant's attorney. Both the order and trial information were signed by a judge.

The clerk of court file-stamped the trial information and order, but the documents were neither docketed nor placed in the court file by the clerk of court until Monday, October 27, 1986. The clerk did not mail a copy to defendant's attorney. Defendant's attorney received his copy of the trial information on Monday, October 27 when he went to the clerk's office. Defendant moved to dismiss for lack of speedy indictment. The trial court found the trial information was filed on October 24 and came within the forty-five day requirement of Iowa Rule of Criminal Procedure 27(2)(a).

Defendant contends the trial information was not filed until his attorney received a copy of it on October 27. That is not the issue. The statutory language provides the information must be "found" within the applicable time frame. The information was presented to the trial judge. The trial judge found the information to contain sufficient evidence, if unexplained, to warrant a conviction by a trial jury. The trial court ordered the clerk to deliver a copy to defendant's attorney. The information was taken to the clerk's office on the forty-fifth day following defendant's arrest. These facts are sufficient to support a finding the information was "found" within forty-five days. We affirm the trial court on this issue.

## II.

 Defendant contends the trial court erred in overruling his motion for new trial based upon the State's use of handwriting analysis of juror questionnaires. Defendant also argues he was prejudiced because he was deprived of his right to trial by a fair and impartial jury.

A. *Handwriting analysis.* After trial, but prior to sentencing, defendant filed a "Motion for Order Requiring County Attorney to Disclose Background Checks on Jurors, and For Relief." Because the motion was granted we do not address the issue of its timeliness.

The motion stated in part:

. . . . .

2. Defendant believes that the County Attorney, in selecting the jurors for his trial, may have had an unfair advantage by reason of his secretly obtaining the criminal histories and/or professional handwriting analysis of the prospective jurors.

3. Pursuant to *State v. Bessenecker,* [404 N.W.2d 134] (Iowa 1987) ... the Court should order the County Attorney to disclose any such juror investigation(s), and, if there has been such, then order appropriate remedial action, to-wit a new trial herein.

The trial court ordered the State to produce the results of the handwriting analysis of the jury panel for defendant's use on appeal. The trial court overruled defendant's motion for new trial, however, based on its findings the *Bessenecker* case did not apply and defendant had no right to discover the State's handwriting analysis reports.

The trial courts are vested with broad discretion in granting or denying motions for new trial based on fair trial considerations. *State v. Watt,* 389 N.W.2d 408, 411

(Iowa App.1986); *see* Iowa R.Crim.P. 23(2)(b)(9).

In *State v. Bessenecker*, 404 N.W.2d 134, 138 (Iowa 1987), the Iowa Supreme Court interpreted Iowa Code section 692.2(3)(a) (1985), which restricts the dissemination of criminal history data to instances in which "[t]he data is for official purposes in connection with prescribed duties. . . ." In reversing Bessenecker's conviction, the court held the county attorney's investigation of all jurors' criminal backgrounds is not a prescribed duty within the meaning of the statute. *Id.* The court recognized limited situations in which the statute may allow the county attorney to have access to the rap sheet of an individual prospective juror. *Id.* Considerations of fairness dictate that in those situations the defendant must have equal access to the rap sheets obtained by the county attorney. *Id.*

We believe the holding in *Bessenecker* is limited to the court's interpretation of section 692.2(3)(a). Under the statute, only the county attorney could obtain the rap sheets; the defendant had no right of access to them. We determine *Bessenecker* does not stand for the proposition, as defendant argues, that the Iowa Code does not permit the State to solicit information about prospective jurors by use of handwriting analysis.

It is a recognized practice for an attorney to make investigations of prospective jurors so that challenges can be utilized intelligently. *Bessenecker*, 404 N.W.2d at 136. There is no doubt that pretrial investigations of prospective jurors are both legal and common. V. Starr & M. McCormick, *Jury Selection* § 4.1, at 90 (1985). Some commentators recommend the use of handwriting analysis of juror questionnaires. *See id.* at 98; Katz, *The Twelve Man Jury*, 5 Trial, Dec.–Jan. 1968–69, at 39, 40.

The majority rule is that, absent a statute or rule of practice providing otherwise, defense counsel has no right of access to official State files concerning prospective jurors. Note, *The Defendant's Right to an Impartial Jury and the Rights of Prospective Jurors*, 48 U.Cin.L.Rev. 985, 986 (1979). *See also* Annotation, *Right of Defense in Criminal Prosecution to Disclosure of Prosecution Information Regarding Prospective Jurors*, 86 A.L.R.3d 571, 574 (1978).

■ We find no authority to support defendant's position the State's use of the handwriting expert entitles him to a new trial. Furthermore, defendant has failed to show any prejudice he suffered because of the use of a handwriting expert in the jury selection process. *See State v. Williams*, 243 N.W.2d 658, 662 (Iowa 1976). We determine the trial court did not abuse its discretion in overruling the motion for new trial. We do, however, note our disapproval of the practice of analyzing jurors' handwriting in this case.

> The pretrial investigation must be aimed at seeking accurate, valuable and pertinent information. There is no need to invade the juror's privacy. Gathering information just for the pleasure of having additional data will only waste the trial team's time and money, and will be of no benefit in the overall trial process. If the information does not have some direct bearing on the issues involved in the trial, then it is of no value, no matter how easy to obtain or how interesting.

V. Starr & M. McCormick, *Jury Selection* § 4.2.3, at 101 (1985).

Public monies were used for the handwriting expert and consequently there should be accountability to the public. After reviewing the information presented by the expert we find it to be of very minimal benefit to the jury selection process. The "graphologist," on the basis of her analysis of handwriting on juror questionnaires, described various jurors as follows: abrupt, creative, determined, flamboyant, flexible, friendly, generous, honest, inhibited, jealous, not a hugger, sexually frustrated, vain, strong sex energy, weak will power, possible drugs (would be interesting to know if he is on hard drugs), possible prostate problem, unhappy with sex partner, good with colors, is feeling the need for more personal attention. About one juror she said, "I don't like the muddiness that I

see in this script which is a very negative thing which relates to rape or murder."

We have concern that the knowledge such procedures are used to uncover information on jurors could have a chilling effect on citizens' response to the call for jury service. Jurors are citizens chosen at random who unless disqualified have a statutory duty to serve. Iowa Code § 607.1. *See Bessenecker*, 404 N.W.2d at 137. Both parties to a case obviously have an interest in learning about the jurors' backgrounds. In fact, a good trial attorney considers certain investigations into jurors' backgrounds a necessary and important part of trial preparation. It is reasonable to assume citizens may shy away from jury service if they know part of serving is to have a determination made from their handwriting that they are such things as "sexually frustrated" or "not a hugger." Additionally, because of the number of persons employed in the county attorney's office there is the possibility of inadvertent disclosure of said materials. *See Bessenecker*, 404 N.W.2d at 137.

■ B. *Fair trial.* Defendant contends he was denied his right to trial by a fair and impartial jury composed of a cross-section of the community. Voir dire was unreported and no record was made of the bases for individual challenges or excuses. In overruling defendant's motion for new trial, the trial court ordered the State to make the handwriting analysis of the juror questionnaires available to defendant for purposes of making whatever record defendant wished to make on appeal.

We find that defendant has failed to demonstrate any prejudice. A defendant is denied his or her right to a fair and impartial jury if systematic and intentional exclusion of an identifiable eligible group prevents the jury from being representative of the community. *State v. Hobson*, 284 N.W.2d 239, 241 (Iowa 1979). Defendant had the burden of establishing that the State's use of handwriting analysis systematically excluded a particular group. *See Williams*, 243 N.W.2d at 662. Defendant wholly fails to show the absence of a fairly representative jury panel. We find no prejudice.

Defendant has not demonstrated any basis for the reversal of his conviction.

AFFIRMED.