# IN THE COURT OF APPEALS OF IOWA

No. 16-0331
Filed March 22, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MARQUISE D. MILLER,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Stuart P. Werling, Judge.

The defendant appeals from his convictions for eluding, theft in the second degree, and accessory after the fact. **REVERSED AND REMANDED.**

Christopher M. Soppe of Pioneer Law Office, Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Marquise Miller appeals from his convictions for eluding, theft in the second degree, and accessory after the fact. Miller maintains the State's use of two of its peremptory strikes to remove the only two black potential jurors was racially motivated, in violation of *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). The trial court rejected that claim, and on appeal Miller maintains the court's ruling was in error.[1]

Because a *Batson* challenge implicates the constitution, we review this claim de novo. *See State v. Griffin*, 564 N.W.2d 370, 372 (Iowa 1997) ("We review the defendant's constitutional challenges de novo.").

The Equal Protection Clause prohibits prosecutors from using peremptory strikes to remove potential jurors from serving "solely on account of their race." *Batson*, 476 U.S. at 89.

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

*State v. Mootz*, 808 N.W.2d 207, 215 (Iowa 2012). To establish a prima facie case, Miller must show (1) he is a member of a cognizable racial group, (2) the prosecutor used peremptory challenges to remove a member of a cognizable racial group from the jury; and (3) the "facts and any other relevant circumstances raise an inference that the prosecutor used the strike to exclude"

---

[1] Miller also raises a number of other arguments. Because his first claim is dispositive, we do not consider the others.

the juror on the account of the juror's race. *See Batson*, 476 U.S. at 96; *see also Powers v. Ohio*, 499 U.S. 400, 416 (1991) (holding the defendant and the prospective juror do not have to be the same race to qualify for a *Batson* challenge). "In determining whether a defendant has established the requisite showing of purposeful discrimination, the court should consider all relevant circumstances including, but not limited to, a pattern of strikes against black jurors, as well as the prosecutor's questions and statements during voir dire." *State v. Knox*, 464 N.W.2d 445, 448 (Iowa 1990).

Here, it is undisputed that Miller is black and the prosecutor struck two potential jurors who were black. The question for the prima facie case is whether there are circumstances that "raise an inference that the prosecutor used the strike to exclude" jurors on the account of race.

The State maintained that it had struck the first of the potential jurors because she indicated she had a negative experience with law enforcement. When asked about the details, the potential juror stated that her granddaughter was killed by an off-duty police officer who was driving sixty miles per hour in a school zone. When she was asked if it would be difficult for her to serve on a criminal case, she responded:

> No. It's just that, if I could have met him and, you know, asked him some questions. Why? Why would he go so fast in a school zone? He wasn't ticketed. He wasn't nothing, and I don't feel that that was right because he should have got a ticket or something for going that fast in a school zone. I would be ticketed if I were going that fast in a school zone and hit a kid. I probably would have went to jail. I know I would have, and it just wasn't right. But I have forgiven him because I had to forgive myself before you can forgive anybody, and I forgave the officer that did that.

The State then moved to strike the juror for cause, and the district court denied the motion. The State later used a peremptory strike to remove the juror. The State indicated (while speaking with the juror in chambers) that the facts of this case—with officers driving at fast speeds in what may be considered dangerous circumstances—were similar enough to the negative experience the juror had with law enforcement to concern the State about having the juror empaneled. This is a race-neutral explanation, and like the district court, we believe the prosecutor's stated reason for the use of the challenge.

Next, we consider whether the State's use of a peremptory challenge against the second potential juror was racially motivated. The following exchange took place between the prosecutor and the second potential juror during voir dire:

> Q. Do you know any law enforcement officers? A. Yes.
> Q. Who do you know, ma'am? A. Just one, Officer Lopez.
> Q. And how do you know Marty? A. Through my husband, who was friends with him.
> Q. Is there anything about that that would affect your impartiality in any way? A. No.
> Q. How do you feel about law enforcement? A. They're okay. There's always room for improvement.
> Q. Sure. They've got a tough job. Wouldn't you agree? A. Mm-hmm.

The State later used a peremptory strike against the juror, and Miller indicated he was making a *Batson* challenge. In response, the State said:

> The other strike that the State has exercised is [the second potential juror], and that drew very specifically about her very pointed comment when I asked the trio of questions about law enforcement officers and asked her if she knew any law enforcement officers and how she felt. She made a very pointed statement to me that there was much room for improvement for there.

I mean, obviously, the State is very, very concerned, and just with her facial expressions, with how she looked very directly at me when she made the comment, I didn't even follow through with the issue of whether or not she had negative experiences because I just didn't want her to prejudice the jury in any way.

Miller's attorney disagreed with the prosecutor's characterization of the second juror's demeanor or response, stating,

[T]here was nothing that she said from my recollection that made anything—I did not mark on my sheet one way or the other as a positive or negative, which meant neutral for me.
Where if I had thought that she was going to be more— better for the Defense, then I would have marked something on my sheet, but I did not. And I don't think her remarks led anyone to believe that she would, you know, find one way or the other and did not, you know, trust police officers or would not be a fair or impartial juror.

The court then denied Miller's *Batson* challenge, ruling:

I believe that *Batson* requires the State, when the challenge is raised, to state articulable grounds separate from race-based selections for their reasons for the strike, which the Court finds that the State has done. The State has met its burden, so I don't think *Batson* is a factor in this exercise of the peremptory strike.

As the Supreme Court has noted, "Race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.,* nervousness, inattention), making the trial court's firsthand observations of even greater importance." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). "In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Id.* Here, we have an on-the-record dispute between the prosecutor and the defense attorney about the potential juror's demeanor, but we do not have any

factual or credibility determinations from the district court to clarify the situation—regarding either the potential juror or the prosecutor.

Additionally, when the defense attorney indicated she was concerned about the use of a strike against the second juror because there were no other potential black jurors, the prosecutor responded, "*Batson* does not ensure that an individual has a particular demographic on the panel. The issue is whether or not the strikes . . . that are exercised are based on race." While we agree, in determining whether the motivation is racially based, we are to rely "on all relevant circumstances"—including a pattern of striking black jurors. *See Miller-El v. Cockrell*, 537 U.S. 322, 331 (2003) ("The prosecutors used their peremptory strikes to exclude 91% of the eligible African–American venire members. . . . Happenstance is unlikely to produce this disparity."); *see also Miller-El v. Dretke*, 545 U.S. 231, 239–40 (2005) ("Some stated reasons are false, and although some false reasons are shown up within the four corners of a given case, sometimes a court may not be sure unless it looks beyond the case at hand. Hence *Batson*'s explanation that a defendant may rely on 'all relevant circumstances' to raise an inference of purposeful discrimination." (citation omitted)).

In considering the State's use of a peremptory strike against the second juror, we note the State removed the only two potential black jurors—using two of its six strikes to do so. In explaining its action, the State relied on the juror's purported negative response about law enforcement. First, we have concerns

about parties using "feelings about law enforcement" as a proxy for race.[2] "A significantly higher percentage of people of color have arrest records due to the disproportionate number of stops, searches, and arrests of people of color." Vida B. Johnson, *Arresting* Batson*: How Striking Jurors Based on Arrest Records Violates* Batson, 34 Yale L. & Pol'y Rev. 387, 389 (Spring 2016). Additionally, "Black people are more likely to have friends and family who are Black. As a result, Black jurors are more likely than White jurors to have friends and family who have been arrested." *Id.* The logical next step is that someone who has been arrested themselves or had someone they care about be arrested is more likely to have negative views of law enforcement. *Id.* at 407. While using potential jurors' response about law enforcement appears to be race-neutral, it is likely to have a disparate impact on potential black jurors. *See id.* at 389 ("Judges and prosecutors then use the existence of prior arrests of the jurors or the jurors' friends or family to strike these prospective jurors, in effect producing juries whose racial compositions are whiter than that of the respective communities."); *see also Hernandez v. New York*, 500 U.S. 352, 376 (1991) (Stevens, J., dissenting) ("An avowed justification that has a significant disproportionate impact will rarely qualify as a legitimate, race-neutral reason

---

[2] According to Gallup, "[c]ombined 2011-2014 data measuring Americans' confident in the police shows that 59% of whites have a great deal or quite a lot of confidence in the police, compared with 37% of blacks." Frank Newport, *Gallup Review: Black and White Attitudes Toward Police*, Gallup (Aug. 20, 2014), http://www.gallup.com/poll/175088/gallup-review-black-white-attitudes-toward-police.aspx.

sufficient to rebut the prima facie case because disparate impact is itself evidence of discriminatory purpose.").[3]

Second, two other nonblack jurors responded with just as negative—if not more negative—responses to the question about law enforcement, and they were not struck. One responded, "They're pretty much all okay. I ran into one bad one," while another responded, "[Law enforcement] do a pretty good job" but then indicated he had "a couple" negative experiences with them. In comparison, the juror at issue responded that she knew an officer who was friends with her husband and then stated, "They're okay. There's always room for improvement." "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." *Dretke*, 545 U.S. at 241. Additionally, while other jurors were asked if they had negative experiences with law enforcement, the prosecutor failed to ask the second juror any additional questions to gain insight into the juror's reason for her statement about "room for improvement." *See id.* at 246 (citing *Ex parte Travis*, 776 So. 2d 874, 881 (Ala 2000) ("[T]he State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.")).

---

[3] We note that while many jurisdictions use prospective juror's criminal history during voir dire, the Iowa Supreme Court has ruled that prosecutors are generally not allowed to access and use the jurors' rap sheets. *State v. Bessenecker*, 404 N.W.2d 134, 138 (Iowa 1987).

The side-by-side comparison of the response of the stricken black juror with that of the two nonblack jurors who were eventually empaneled, in addition to the question relied on by the State, undermines the State's given reason for striking the juror. The "Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Snyder*, 404 N.W.2d at 134. Thus, we reverse Miller's convictions and remand for a new trial.

**REVERSED AND REMANDED.**