383 N.W.2d 570 (1986)
In the Interest of N.H. and C.H., Minor Children,
P.H., Natural Mother, Appellant,
v.
D.H., Natural Father, Appellee.
No. 85-1192.
Supreme Court of Iowa.
March 19, 1986.
Rehearing Denied April 18, 1986.
*571 Dennis F. Chalupa of Brierly, McCall, Girdner, Chalupa & McCall, Newton, for appellant.
James W. Cleverley, Jr., of Diehl, Clayton, Cleverley, Knopf & Williams, Newton, for appellee.
Gilbert R. Caldwell III, Newton, for the children.
Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER and WOLLE, JJ.
SCHULTZ, Justice.
The mother of two children appeals from the juvenile court order denying her petition to terminate the parental rights of the children's father pursuant to Iowa Code section 232.116(3). On appeal, the mother claims the juvenile court erred by interpreting section 232.116(3) to require that the parent be offered or receive corrective services before the child abuse occurs which is the basis of the parental rights termination. She argues that a reasonable interpretation of section 232.116(3) requires only that the parent was offered or had received services prior to the hearing on termination. We agree with the mother's interpretation and hold that the parental rights of the father be terminated.
P.H. (mother) and D.H. (father) are the natural parents of N.H., a seven-year-old girl, and C.H., a three-year-old boy. In August 1982 the juvenile court ordered the father to remove himself from the home based on findings that he had physically and emotionally abused N.H. and her two half-siblings, children of the mother from a previous marriage who also lived in the home. In February 1983 the juvenile court adjudicated N.H. and her two half-siblings to be children in need of assistance, section 232.96, based on the abuse findings. A month later the juvenile court also adjudicated C.H., born after the removal of the father from the home, a child in need of assistance based on the previous CINA adjudication. Thereafter, the marriage of the father and mother was dissolved. The matter of custody was not addressed in the dissolution decree. In September 1983 the juvenile court allowed the father to begin weekly supervised visits with N.H. and C.H. at a local mental health center where he was attending therapy sessions.
Thereafter, in January 1985, the mother filed a petition to terminate the father's parental rights to N.H. and C.H. In its ruling on the petition, the juvenile court noted that the CINA adjudications revealed that N.H. and her half-siblings were physically and emotionally abused by the father. Further, the court detailed C.H. was later adjudicated to be a child in need of assistance based on the findings in the previous adjudication of the other children in the family. The juvenile court found that for a three-year period following the August 1982 order to vacate the only contact the father had with the children was directly supervised visits at the county mental health center and that these visits were a burden on the children and of no benefit to them. Further, the court determined that the visits were no longer of any therapeutic value to the father. The court stated:
Not even the testimony most favorable to [the father] supports the removal of the requirement of positive, direct, individual supervision of any visitation between him and either of the children. There appears no basis for an expectation that removal of the requirement should ever occur. There is no reason to believe that any child could ever be returned to his custody.
In its ruling the juvenile court terminated the visitation rights of the father; however, it determined that the requirements of a termination of parental rights pursuant to section 232.116(3) were not satisfied. Section 232.116(3) states:

*572 Except as provided in subsection 6, the court may order the termination of both the parental rights with respect to a child and the relationship between the parents and the child on any of the following grounds:
....
3. The court finds that:

a. One or both parents has physically or sexually abused the child; and

b. The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused as the result of the acts or omissions of the parent or parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding; and

c. There is a clear and convincing evidence that the parents had received or were offered services to correct the situation which led to the abuse.

(Emphasis added.) Specifically, the court observed that section 232.116(3) requires corrective services be offered to or received by the father before the proven child abuse that is the basis for the parental rights termination. The juvenile court's interpretation was based on the specific language contained in subsection 3(c) and stated:
The use of the word "had" with "received" makes that a use of the past perfect tense. The past perfect denotes completion of the action of the verbs "offered" or "received" at a time in the past, prior to the present perfect denoted by "has abused" and "has adjudicated."
The court then concluded that it could not terminate the father's parental rights because it found that he was only offered or received corrective services after and not before the abuse that was the basis of the termination.
We disagree with the juvenile court's interpretation of section 232.116(3) and believe it to be repugnant to the overall purpose and scheme of chapter 232. The court's reading of section 232.116(3) would require that a child be abused twice before parental rights could be terminated. Such a "second bite" interpretation is abhorrent to the statutory rules of construction for chapter 232 "that each child under the jurisdiction of the court shall receive ... the care, guidance and control that will best serve the child's welfare and the best interest of the state." Iowa Code § 232.1.
We recently stated: "[I]t is our view that the current statutory termination provision applicable here, like those they replaced, are preventative as well as remedial. The provisions therefore mandate action to prevent probable harm to a child and do not require delay until after harm has occurred." In re Dameron, 306 N.W.2d 743, 745 (Iowa 1981). In our interpretation of relevant sections, the manifest intent of the legislature prevails over the literal import of the words used. Beier Glass Co. v. Brundige, 329 N.W.2d 280, 283 (Iowa 1983). In ascertaining that intent, we consider the object sought to be accomplished along with the evils sought to be remedied. Id. We will seek a reasonable interpretation which will best affect the purpose of the statute and avoid absurd results. Id.
A requirement that a parent be offered or receive services to correct the situation that led to the abuse before the abuse occurs would not serve the purpose of the chapter and reaches an absurd and unnecessary result. The overriding purpose of chapter 232 is the child's welfare and best interests; of secondary importance is that the child remain in his or her home. See § 232.1, .102(3)(b). When there is a transfer of legal custody from the parent every effort should be made to return the child to his or her home. § 232.102(5). When custody has been transferred from a parent because of physical or sexual abuse, the parent must be offered services to correct the situation which led to the abuse before a termination of parental rights may be ordered. § 232.116(3)(c). If this service has been offered or received, then the court must still determine whether the welfare of the child and the best interests of the state are served by such termination. § 232.116(6)(c). *573 We do not interpret section 232.116(3) to require that the child abuse occur after services have been offered to or received by the parent where evidence shows that the services have not corrected the situation which led to the abuse. Such an interpretation flies in the face of the avowed purpose of chapter 232. We need not gamble with the child's welfare and future by subjecting the child to future abuse before a parental rights termination can take place. We conclude the juvenile court's interpretation of section 232.116(3) is incorrect.
We now examine the record on appeal. Our review of proceedings to terminate a parent-child relationship is de novo. Thus, it is our duty to review the facts as well as the law and adjudicate rights anew on those propositions properly preserved and presented to us. Dameron, 306 N.W.2d at 745; In re W.G., 349 N.W.2d 487, 491-92 (Iowa 1984); In re O'Neil, 303 N.W.2d 414, 422 (Iowa 1981). Our review of the juvenile court's ruling indicates the court would have terminated the father's parental rights but for its erroneous conclusion that the offered services to the parent must proceed the physical or sexual abuse to the child. We are not bound by these findings; however, we accord weight to the fact-findings of the juvenile court. Dameron, 306 N.W.2d at 745.
On this appeal the mother claims that the juvenile court improperly interpreted section 232.116(3), requesting that we reverse the juvenile court's ruling and remand for termination of the father's parental rights. From the briefs submitted on appeal it is apparent that the parties erroneously assumed our review of this matter is at law rather than de novo. The transcript was provided late; however, the record on appeal is now complete. Neither party addressed the juvenile court's determination of facts in their issues presented for review. While we would have preferred that the parties had addressed the issue of termination and provided portions of the transcript in the appendix, we believe the record provides answers to the issue so convincingly that we deem a further delay to be detrimental to the parties, especially the children. It is the responsibility of the parties to know the scope of our review and address the proper issues. We determine the appeal on the basis of the record and briefs submitted.
Our review of the record leads us to conclude that the mother's petition for termination should have been granted. In separate proceedings, the juvenile court has already adjudicated both N.H. and C.H. to be children in need of assistance. The juvenile court in those proceedings found there was clear and convincing evidence that the father engaged in a rigid pattern of extraordinary emotional abuse on his stepchildren and N.H. for a period of years and that he engaged in similar abuse of his older natural children. Further, the children were frequent recipients of torturing physical abuse administered by the father. C.H. was born during the pendency of those proceedings and was adjudicated a child in need of assistance based on the father's acts toward the other children in the family. The court noted that the female children had been sexually abused by the father and that he also had some preoccupation with the sexuality of the male children. The court commented that unless there was a remarkable and unexpected change in the father's psychological condition, the children were not safe from his imaginative ways of abusing the children.
The father appealed from these CINA adjudications contending that the denial of his visitation rights was not warranted by the evidence and not a proper disposition. The court of appeals affirmed the juvenile court's decisions in an unpublished opinion. In re R.E., 355 N.W.2d 64 (Iowa 1983). The court set out 20 paragraphs detailing the father's conduct and behavior toward his children which it found to be atrocious and particularly reprehensible. The court further indicated that such recitals "are a mere sampling of the record evidence before the juvenile court" and "the record is replete with other bizarre acts and behaviors by father D. toward the children, including *574 sexual, physical, and emotional abuse which, no doubt, have inflicted indelible trauma upon the children."
Also in the record in this appeal is a report of counseling received by the father after the CINA adjudications. The evidence shows that both parents had received generous counseling services from the Jasper County Mental Health Center. It indicates that the father's personality pattern is resistant to change as evidenced by test results in 1982 and 1984. The report notes that the father's "type of personality problems is felt to be an enduring, chronic personality pattern, which is resistant to change." While the psychologist recommended that weekly visitations with the children be continued in 1984, he indicated it was more for the benefit of the children than necessarily for the father; however, he detailed that such visitation be closely supervised.
The testimony at the termination hearing additionally supports termination of the father's parental rights. The father has received mental health counseling for over three years. The psychologist and two social workers agreed that unsupervised father-child visitation is undesirable because of danger to the children of physical abuse by the father. Although the psychologist recommended that supervised visitation continue, he conceded that the father's psychological tests indicate a chronic emotional disorder resistant to change. We find the evidence in the record clearly shows that further contact between the father and children is detrimental to the children. The evidence is clear and convincing that the services offered to and received by the father have not corrected the situation which led to the physical abuse of N.H. by the father.
We conclude that all of the grounds for termination of parental rights required by section 232.116(3) have been satisfied. Still, the termination must be in the best interests of the children. See § 232.116(6)(c). Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that the parent is capable of providing. Dameron, 306 N.W.2d at 745; O'Neil, 303 N.W.2d at 422-23; In re Ponx, 276 N.W.2d 425, 433 (Iowa 1979). The mother has had sole custody of N.H. and C.H. for over three years. While there is an interest in maintaining the family unit, this is not absolute and may be forfeited by certain parental conduct. In re Wall, 295 N.W.2d 455, 457 (Iowa 1980). We agree with the juvenile court's assessment that there is no reason to believe that any child could be returned to the father's custody.
We hold that the juvenile court should have terminated the father's parental rights. We reverse and remand for an order by the juvenile court in accordance with our holding.
REVERSED AND REMANDED.