### In the Interest of A.T., H.T., M.T., and R.M., Children.

### Appeal of B.T., Natural Mother, Appellant.

### No. 87–1054.

Court of Appeals of Iowa.

Sept. 28, 1988.

Stephen J. Belay, Cedar Rapids, and Karen A. Volz of Ackley, Kopecky & Kingery, Cedar Rapids, for appellant mother.

Thomas J. Miller, Atty. Gen., Valencia Voyd McCown, Asst. Atty. Gen., and Robert Kimm, Asst. Linn Co. Atty., for appellee State.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

The mother of four children appeals from the juvenile court order terminating her parental rights. She challenges the sufficiency of the evidence to support termination. We affirm.

The four children in question have the same mother, but three different fathers (R.E., E.S., and R.M.II). The children lived with the mother or her relatives until May 1986. In that month, the mother assaulted two of the children while intoxicated, necessitating the hospitalization of both children. At that time all four children were placed in foster care, where they have since remained. As a result of this incident, the mother was convicted and imprisoned for the crime of child endangerment.

There was evidence that the children have been subjected to repeated physical abuse by the mother and by a series of the mother's live-in boyfriends. In 1979, the mother's parental rights were terminated with respect to an older child; another older child died in 1978 from injuries inflicted by one of the mother's boyfriends. There was also evidence that the mother has consistently failed to maintain an adequate and stable residence for the children, that she has failed to demonstrate affection to the children, and that she is an untreated alcoholic.

The State filed a petition to terminate the parental rights of the mother and all putative fathers with respect to all four of the children. After a hearing, the juvenile court did terminate the parental rights of the mother and all putative fathers.

Only the mother has appealed from the termination order. She challenges the sufficiency of the evidence to support termination under Iowa Code section 232.116(3). She argues the evidence did not establish that two of the four children had suffered abuse. She also claims the evidence did not establish that she had been effectively offered services to correct the situation which led to the abuse. In addition, the mother contends the evidence establishes that termination is not in the children's best interests.

Our review of proceedings to terminate a parent-child relationship is de novo. *In Interest of Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). We accord weight to the fact findings of the juvenile court, especially when considering the credibility of the witnesses the court has heard and observed first hand, but we are not bound by them. *Id.*

Our primary concern is the best interests of the children. We look to the children's long-range, as well as immediate, interests. *Id.* Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. *Id.*

The mother's rights in this case were terminated pursuant to Iowa Code section 232.116(3), which states:

> Except as provided in subsection 6, the court may order termination of both the parental rights with respect to a child and the relationship between the parents and the child on any of the following grounds:
>
> *     *     *     *     *     *
>
> 3. The court finds that:
>
> a. One or both parents has physically or sexually abused the child; and
>
> b. The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused as the result of the acts or omissions of the parent or parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding; and
>
> c. There is clear and convincing evidence that the parents were offered but refused services or failed to cooperate to correct the situation which led to the abuse or that the parents had received services to correct the situation which led to the abuse but the services did not correct the abusive situation.

The mother contends that this statute requires all three grounds for termination be met before termination may take place. She claims the record is totally devoid of

any findings of physical abuse of R.M. and A.T. As to M.T., it has not been shown by clear and convincing evidence that he was physically or sexually abused. Therefore, the requirements of section 232.116(3) have not been met.

Iowa Code section 232.116(3) was amended by the 1987 legislature. The new provision was codified at section 232.116(1)(c) (Supp.1987) and was effective on July 1, 1987. The new provision reads:

1. Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:

\* \* \* \* \* \*

c. The court finds that <u>all of the following have occurred:</u>

(1) One or both parents have physically or sexually abused the child.

(2) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused as the result of the acts or omissions of <u>one</u> or <u>both</u> parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(3) There is clear and convincing evidence that the parents were offered but refused services or failed to cooperate to correct the situation which led to the abuse or that the parents had received services to correct the situation which led to the abuse but the services did not correct the abusive situation.

Iowa Code § 232.116(1)(c) (additions underlined). These changes serve to clarify this section only. Our result is the same under either version.

■ Our statutory termination provisions are preventative as well as remedial. The provisions mandate action to prevent probable harm to a child and do not require delay until after harm has occurred. *Dameron,* 306 N.W.2d at 745. We interpret the relevant sections so as to further the manifest intent instead of the literal word. *Beier Glass Co. v. Brundige,* 329 N.W.2d 280,

283 (Iowa 1983). It is our job to seek a reasonable interpretation which will best effect the purpose of the statute and avoid absurd results. *Id.*

"The overriding purpose of chapter 232 is the child's welfare and best interests; of secondary importance is that the child remain in his or her home." *In Interest of N.H. and C.H.,* 383 N.W.2d 570, 572 (Iowa 1986). Where the father was engaged in a rigid pattern of extraordinary emotional abuse and physical torturing of his children for a number of years, the requirements of Iowa Code section 232.116(3) were found to be satisfied even with regard to a child born during the pendency of the proceedings. *Id.* at 574. A second act of abuse of a child after corrective services have been offered is not required where there is clear and convincing evidence that the services offered and received have not corrected the situation. *Id.*

■ The record shows that the mother has a history of abusive behavior toward her children. She also has been associated with a series of men who have abused both the mother and the children. The mother has been offered extensive and complete correctional services over a number of years, but the abuse continued until all four children were placed in foster care in May of 1986 after an incident that led to the mother's imprisonment for child endangerment.

The juvenile court found that all the children had suffered abuse at the hands of one or both of their parents. Child abuse may be shown by evidence of "(1) multiple injuries or other serious impairment of health that ordinarily would not occur in the absence of abuse or gross neglect, and (2) the parents' control over the child during the period when the abuse or neglect is alleged to have occurred." *In Interest of Driver,* 311 N.W.2d 87, 89 (Iowa 1981), citing *Higgins v. Dallas County Welfare Unit,* 544 S.W.2d 745 (Tex.Civ.App.1976). There is clear and convincing evidence that each of the children were abused either by the mother herself or when she had control

over the children. This satisfies the intent of section 232.116(3)(a) and (1)(c)(1).

The mother's history includes six children. She first became involved with the Department of Human Services in October of 1977 after a neighbor filed a neglect report concerning two prior children. The mother was living in a woodshed with her two young children and her boyfriend, R.E. Bruises were observed on both children by the Public Health Nurse.

In February of 1979, the three year old died from a severe and extensive skull fracture. The injury was the result of physical abuse by R.E. The child's body was covered with marks and lesions, including cigarette burns. The child also suffered from a stress ulcer in his intestines.

As a result of this death, the second child was removed. Bruises and sores were found on his body and a bald spot was on his head where hair had been pulled out. Once in foster care, the child suffered from nightmares. He was adjudicated as a child in need of assistance and was then voluntarily released by his mother in September of 1979. The mother had been provided extensive services, but failed to cooperate with the agencies.

M.T. was born in September of 1978. The following January he was adjudicated a child in need of assistance. His mother was not providing the parental care and supervision needed for his safety, health, growth, and future development. He also had sustained injuries. However, he did remain in his mother's custody with protective supervision by the Department. After a while the mother began cooperating and the proceedings were dismissed.

In December 1980 M.T. was removed from his mother's care after an incident which injured both the child and his mother. R.P., the mother's current boyfriend, physically injured both after drinking heavily. Later M.T. was returned to his mother only to be abused again in December of 1982. M.T. was physically abused by R.M.II while in his mother's care and custody. M.T. had been beaten on the back with a coat hanger. The mother then moved to Utah with R.M.II and the children. Between December of 1982 and May of 1986, the children were the subject of seven abuses or critical care reports, two of which were founded.

On May 11, 1986, the mother struck H.T. across the face and head with a leather strap because of H.T.'s eating habits. Later that night the mother struck and kicked H.T. in her stomach with cowboy boots on. This incident occurred when E.S. attempted to restrain the mother from taking H.T. and M.T. from his home where they were staying. It was late and she had been drinking. In front of deputies, the mother assaulted H.T. again and threatened to kill her before letting her father (E.S.) have her.

As a result of this incident, H.T. and M.T. were placed in foster care. R.M.III and A.T., who had been living with a step-grandmother, were also placed in a foster home. All four children were adjudicated to be in need of assistance and have been in foster care since May 1986.

Each of these four children has suffered too much already. Efforts have been made to work with the mother for over eleven years, but she has been uncooperative and has failed to change her behavior.

■ The best interests of the children require termination of parental rights. The mother's past performance is indicative of the future care she is capable of providing. *In re Interest of N.H. and C.H.*, 383 N.W.2d 570, 574 (Iowa 1986). The mother's past performance provides clear and convincing evidence that the children have suffered physically and emotionally with her in the past. As we foresee probable harm to the children if returned to their mother, we affirm the termination of the mother's rights as to these four children.

AFFIRMED.