**In the Interest of M.L.W. and G.J.W., Children,**

**Appeal of R.W., Mother, and J.W., Father.**

**No. 90–320.**

Court of Appeals of Iowa.

Aug. 30, 1990.

Michael L. Jankins and Greg S. Noble of Murray, Davoren & Jankins, Des Moines, for appellant mother.

J. Michael Mayer, Des Moines, for appellant father.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

DONIELSON, Presiding Judge.

R.W., mother, and J.W., father, appeal from the juvenile court order terminating their parental rights with regard to their two sons. They challenge the sufficiency of the evidence to support termination. We affirm.

This case involves two children, M.W., born in July, 1981, and G.W., born in May, 1983. Their parents were married to each other in 1975, but the marriage was dissolved in May 1983. The dissolution decree placed the children in the mother's custody.

The parents' marriage was chaotic and marked by several instances of domestic violence. This violence has necessitated the use of domestic violence shelter services by R.W. on various occasions. The dissolution of the marriage did not end the relationship between R.W. and J.W., nor did it terminate the violence. J.W. has consistently denied the occurrence of do-

mestic abuse and has denied responsibility for instances where R.W. has been injured.

Both parents are suspected of physically abusing the children on repeated occasions. Department of Human Services' (DHS) records indicate that involvement with this family began in 1983 and since that time there have been at least eight substantiated child abuse or denial of critical care reports concerning one or both of the children.

In April of 1987, M.W. was adjudicated to be a child in need of assistance on grounds of a lack of supervision. M.W. was again adjudicated to be a child in need of assistance in November of 1987 grounded upon physical abuse by parent, as well as lack of supervision. At this time M.W. was ordered removed from R.W.'s custody and placed in foster care.

In March, 1988, the court adjudicated G.W. to be a child in need of assistance due to parental failure to exercise a reasonable degree of care in supervising him. In March, 1989, R.W. consented to the placement of G.W. in foster care. The children have remained in foster care continuously since the dates noted above.

In December 1989 the State filed a petition asking that the parental rights of both parents be terminated as to M.W. and G.W. The matter of termination came for trial before the juvenile court January 10 and 11, 1990, and the court did terminate the parental rights of both parents. With regard to M.W., the older child, the court relied on Iowa Code section 232.116(1)(e), which permits termination if a child has been adjudicated CINA, has been in foster care for twelve of the last eighteen months, and cannot safely be returned to the parents' care. With respect to G.W., who had been in foster care for a shorter period, the juvenile court relied on Iowa Code section 232.116(1)(c). That statute permits termination if several conditions are met, including physical abuse and the failure of State-offered services to correct the abusive situation.

The parents challenge the sufficiency of the evidence to prove that M.W. cannot safely be returned to their custody. They also argue the evidence failed to show either that G.W. had been physically abused, or that the State had provided adequate but unsuccessful services in an attempt to correct the abusive situation.

■ I. *Standard of Review.* Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ II. *M.W.* Iowa Code section 232.-116(1)(e), relied upon as the basis for termination in the case of M.W., allows termination of the parent-child relationship if:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96;

(2) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months; and

(3) There is clear and convincing evidence the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The third requirement of this section is met when the child cannot be returned to the parental home because the definitional grounds of a child in need of assistance, Iowa Code § 232.2(6), exist. *In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988).

■ Children should not be forced to endlessly await the maturity of their parents. *In Interest of T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). Termination must occur if twelve to eighteen months have elapsed since the child was removed from the home and the parent still cannot take care of the child. *Id.* Evidence of the parent's past performance may be indicative of the quality of future care he or she is capable of providing. *In the Interest of Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

Child in Need of Assistance (CINA) petitions were filed on both children in 1983 following two founded reports of denial of critical care. The petitions alleged that R.W. did not attend to the children's physical and emotional needs. An evaluation was done of R.W. at Broadlawns Medical Center after the filing of the CINA petitions. The evaluation concluded that R.W. was a well meaning, passive-dependent woman of limited intellectual functioning. It indicated that situational stressors interfered with adequate parenting. The evaluation noted that the relationship of R.W. and J.W. had been a chaotic one, characterized by separations, alcohol abuse, and domestic violence. Both children were adjudicated in need of assistance upon the stipulation of all the parties.

In 1984 DHS filed a report which indicated that service providers were experiencing difficulty contacting R.W. She was not attending parenting classes and was missing appointments with the homemaker.

In 1985 allegations of physical abuse by mother were substantiated. M.W. had visible injuries that the investigating worker concluded were caused by R.W.'s use of a belt.

Service providers acknowledged some improvement in parenting skills by R.W. and, in early 1986, hesitantly recommended the case be closed as it was unlikely that continued services would lead to further progress. However, in November of 1986 a new child abuse report was filed and allegations of physical abuse of M.W. were substantiated, R.W. being the perpetrator. M.W. had been whipped about the back and face with an object that a medical report indicated was likely a doubled-up cord.

Again in February, 1987, another substantiated report indicated M.W.'s mother had struck him in the head with a can opener. In the summer of 1987 a DHS report was filed stating other reports of physical abuse had occurred in addition to those which had been substantiated. At this time, the social worker expressed concern about an entrenched cycle wherein J.W. and R.W. disagreed about the children's care, J.W. would leave, resulting in a lack of support for R.W. and "[w]hen [R.W.] feels unsupported, her fears seem to surface as abuse towards the children." A report filed in 1987 also expressed concern because R.W. had attended only five of sixteen parenting classes.

Following the two orders adjudicating M.W. a child in need of assistance in 1987 and his placement in foster care, there were additional substantiated reports of denial of critical care involving both children. In January of 1989, M.W. was thrown against a wall during a violent confrontation between R.W. and J.W. In May, 1989, the juvenile court ordered J.W. to refrain from contacting the children or their mother when the children were visiting R.W. J.W. has repeatedly disobeyed this order resulting in further substantiated reports of denial of critical care.

The record indicates that both boys exhibit aggressive behavior and can be difficult to control. Both children are hyperactive, G.W. somewhat more so and he is currently prescribed Ritalin for this condition. However, the record indicates the boys have responded well to their respective foster homes and are capable of behaving appropriately. The boys frequently test whether their therapist, Richard Daumeuller, will be aggressive or abusive toward them. Mr. Daumeuller testified that without a stable and safe home environment M.W. and G.W. will not likely resolve their behavior disorders.

DHS has provided R.W. with a wealth of resources to assist her in improving her parenting skills over the past seven years. The record reveals that while R.W. has participated in these services, little progress has been made. R.W. has failed to maintain a stable home setting and has proven ineffective in parenting her children. If returned to her care, the children would face an unstable home environment and inadequate supervision and control. Furthermore, R.W. and J.W. continue to be involved in a pattern of violence and domestic instability. This relationship threatens the physical and emotional security of the children. J.W. does not personally seek custody of the children but argues instead

that custody should be returned to R.W. The record indicates that while R.W. may be caring and loving, she is unable to competently supervise her children. The record contains clear and convincing evidence to sustain the juvenile court's decision to terminate each parent's right as to M.W.

■ III. *G.W.* The State relied upon Iowa Code section 232.116(1)(c) as the basis for termination in the case of G.W. That section allows termination if all of the following have occurred:

(1) One or both of the parents have physically or sexually abused the child.

(2) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(3) There is clear and convincing evidence that the parents were offered but refused services or failed to cooperate to correct the situation which led to the abuse or that the parents had received services to correct the situation which led to the abuse but the services did not correct the abusive situation.

The parents contend the record is devoid of any finding of physical abuse of G.W. or of evidence that R.W. has not benefited from services. Therefore, the requirements of § 232.116(1)(c) have not been met. The parents' contentions are similar to those presented in *In Interest of A.T.*, 433 N.W.2d 64 (Iowa App.1988). In *A.T.* the mother of four children challenged the termination of her parental rights on grounds that evidence of findings of physical abuse of two of the four children was absent. There, we rejected the mother's challenge emphasizing the preventative nature of our statutory termination provisions and our duty to "interpret the relevant sections so as to further the manifest intent instead of the literal word. It is our job to seek a reasonable interpretation which will best

effect the purpose of the statute and avoid absurd results." *Id.* at 66.

"Physical abuse" is defined in § 232.2(38) as:

... any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian or custodian or other person legally responsible for the child.

This definition is broad enough to include injury to the child as a result of denial of critical care. G.W. has suffered injury due to the failure of his mother to adequately supervise him. In 1989, following six years of DHS involvement, G.W. suffered a cut near his groin area while visiting his mother which necessitated a trip to the hospital and led to the mother's consent to place G.W. in foster care. This incident led to a substantiated report of denial of critical care.

The record shows that R.W. has a history of abusive behavior toward her children. She also has been unable or unwilling to resolve her relationship with J.W.; a man who has abused both mother and children. She has been offered extensive services over the past seven years but the abusive behavior continued even after the children were placed in foster care. J.W. has failed to cooperate with service providers in that he has refused to provide his address or place of employment and has repeatedly violated the court's no contact order.

The best interests of these children require termination of parental rights. The past performance of R.W. and J.W. provide clear and convincing evidence that the children have suffered physically and emotionally in the past. As we foresee probable harm to the children if returned to their mother, we affirm the termination of the parents' rights as to these two children.

AFFIRMED.

SACKETT, Judge (specially concurring).

I specially concur. I regretfully must agree with the majority's decision to terminate parental rights. I am convinced these parents love their children very much. They are well-meaning, but they lack the maturity to control their own lives and put

the care of the children in the proper perspective. I am disappointed that despite the extensive resources the State directed toward helping this family, the State was unable to formulate a plan to help these parents overcome their parenting deficiencies.

These children, now seven and nine, have strong emotional and biological ties to their birth parents. The legal termination of these children's parental rights does not sever these emotional and biological ties. I wish I could express the confidence of the majority that termination of these children's rights is in their best interest. Termination of parental rights carries with it no promise for adoption and no promise if there is an adoption it will be successful.