**In the Interest of T.R., A Minor Child,**

**T.R.H., Mother, Appellant.**

No. 91–818.

Court of Appeals of Iowa.

Jan. 29, 1992.

John P. Messina, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellee State.

Peter W. Hansen of Hildreth & Hansen, Burlington, as guardian ad litem for minor child.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

T.R. was born on June 12, 1989 and is now two and one-half years old. When T.R. was only four months old and living with his parents, a report regarding the possible abuse of T.R. was filed with the Department of Human Services. The report alleged that T.R.'s arm had been broken and that the fracture was not the result of an accident.

A week later, on October 19, 1989, the DHS was granted temporary custody of T.R., and a petition requesting that T.R. be adjudicated a child in need of assistance was filed. Both the temporary removal and the CINA petition were based on Iowa Code section 232.2(6)(b), (c) and (g) (1989 Supp). The DHS placed T.R. in foster care.

On October 25, a hearing was held on the petition, and T.R.'s parents admitted that T.R. was a child in need of assistance within the meaning of Iowa Code section 232.-2(6)(c) and (g) (1989 Supp.). Accordingly, T.R. was adjudicated a child in need of assistance pursuant to those sections. However, he was returned to his parents with the provision that intensive in-home services be conducted. As a result of the parents' unsatisfactory response to in-home services, T.R. was again placed in foster care in December 1989, and homemaker services were ordered for the parents.

Later, on March 5, 1990, T.R.'s putative father filed a written statement with the court denying that he was T.R.'s biological father. He moved to Illinois and has not been involved in these proceedings since.

In April 1990, a petition for termination of parental rights was filed. Almost a year later, in March 1991, a hearing on the petition was held. The juvenile court found that the grounds alleged in the petition had been established, not only by clear and convincing evidence, but by overwhelming evidence. In fact, none of the parties disputed that T.R. could not be returned to his parents at the time of the hearing. Rather, the only dispute was whether the mother's parental rights should be terminated or the foster care placement continued.

Having found the grounds for termination to be established, the court then considered the propriety of termination in light of T.R.'s physical, mental and emotional needs. The court found (1) it was unlikely that T.R.'s mother would ever be capable of meeting his needs, and (2) T.R. had been integrated into a stable, satisfactory foster family which was interested in adopting T.R. Accordingly, the court terminated the parental rights of both parents pursuant to Iowa Code sections 232.-116(1)(c) and (g) (1989 Supp.). The court further ordered that custody of T.R. be placed with the Department of Human Services and that the adoption of T.R. by the foster parents proceed forthwith.

The mother has appealed from this order. She asserts the Iowa termination of parental rights statute, in particular Iowa Code section 232.116(2) (1991), violates her right to due process of law guaranteed by the fourteenth amendment to the United States Constitution.

Appellate review of termination proceedings is de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d

353 (1985). The Iowa courts accord statutes a strong presumption of constitutionality. *Roth v. Reagen,* 422 N.W.2d 464, 467 (Iowa 1988). In challenging the constitutionality of a statute, one assumes

a heavy burden as the following propositions are well established. Ordinarily statutes regularly enacted by the legislature will be accorded a strong presumption of constitutionality and all reasonable intendments must be indulged in favor of the legislation attacked. One who challenges legislation on constitutional grounds has the burden to negate every reasonable basis upon which the statute may be sustained. Where the constitutionality of a statute is merely doubtful or fairly debatable, the courts will not interfere. Thus a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the Constitution.

The judicial branch of the government has no power to determine whether the legislative Acts are wise or unwise, nor has it the power to declare an Act void unless it is plainly and without doubt repugnant to some provision of the Constitution.

*State v. Hall,* 227 N.W.2d 192, 193 (Iowa 1975) (citations omitted).

The first subsection of Iowa Code section 232.116 (1991) provides that the district court "may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child" if it finds clear and convincing evidence establishing the existence of any one of eleven possible grounds. The second subsection provides in relevant part:

In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the physical, mental, and emotional condition and needs of the child. Such consideration may include any of the following:

\* \* \* \* \* \*

*b.* For a child who has been placed in foster family care ..., whether the child has become integrated into the foster family to the extent that the child's fa-

milial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family. In considering integration into a foster family, the court shall review the following:

(1) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining that environment and continuity for the child.

\* \* \* \* \* \*

*c.* For a child who has been placed in foster family care, any relevant testimony or written statement provided by the child's foster parents.

Iowa Code § 232.116(2) (1991). The third subsection provides five grounds upon which the court may decline to terminate the relationship between the parent and child. *See* Iowa Code § 232.116(3) (1991).

Appellant's constitutional argument is rather complex. In essence, appellant argues that the likelihood the court will commit error by improperly basing its termination decision on a bare "best interest" analysis is so great as to deny the parent the process due to protect the parent's interest in maintaining the biological family unit.

It is important to look closely at the syllogism of Appellant's argument. Appellant contends Iowa Code section 232.116(2) (the court's inquiry into the nature of the child's foster care placement when deciding whether to terminate her parental rights) violates her procedural due process rights. Appellant's argument focuses on the statute's direction to the court to receive evidence regarding the child's foster placement despite the fact that the existence and nature of any relationship the child may have developed with another family unit is entirely irrelevant to the question of whether the mother has forfeited her right to parent the child. This direction, argues Appellant, encourages the court to ignore the question of whether the parent can and will provide for the child's basic needs and to, instead, make its termination decision upon some variant of the question presented in a traditional custody analysis—which

family will best minister to the child's development. The encouragement to substitute a bare "best interest" test for the "clear and convincing evidence that the child cannot be returned to the parents" test comes from the court's natural inclination to desire the best for a child. The effect of this natural inclination together with the procedure provided by the statute creates a high risk of error. Appellant then concludes that the high risk of error denies the parent his or her right to due process of law guaranteed by the fourteenth amendment to the United States Constitution.

■ To decide whether the statute passes constitutional muster, we employ the *Ingraham* test. *See Ingraham v. Wright*, 430 U.S. 651, 675, 97 S.Ct. 1401, 1414–15, 51 L.Ed.2d 711, 733 (1977) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976)). The *Ingraham* test provides the "factors long considered to constitute the analytic framework for determining the procedural safeguards required by due process." *In re R.E.*, 462 N.W.2d 723, 724 (Iowa App.1990). The factors to be considered are: (1) the private interest that will be affected, (2) the risk of an erroneous deprivation of the private interest, (3) the probable value, if any, of additional or substitute procedural safeguards, and (4) the state interest, including the fiscal and administrative burdens that the additional or substitute procedural requirement would involve. *See Patten v. Patrick*, 276 N.W.2d 390, 394 (Iowa 1979) (quoting *Ingraham*, 430 U.S. at 675, 97 S.Ct. at 1414–15, 51 L.Ed.2d at 733).

■ The private interest is clear in termination cases. The parent whose parental rights are subject to termination has an interest in parenting his or her child. *See In re K.L.C.*, 372 N.W.2d 223, 226 (Iowa 1985). This interest involves a basic civil right "far more precious than property rights." *In re M.H.*, 367 N.W.2d 275, 278 (Iowa App.1985). Indeed, the parent's fundamental liberty interest in the care, custody and management of the child is constitutionally protected. *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511, 519 (1978); *Wisconsin v. Yoder*, 406 U.S. 205, 233, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15, 35 (1972). *See also In re K.L.C.*, 372 N.W.2d 223, 226 (Iowa 1985); *In re Wall*, 295 N.W.2d 455, 457 (Iowa 1980); *In re M.H.*, 367 N.W.2d 275, 278 (Iowa App.1985). Surely, the court is not empowered to take a child from his or her parents simply upon a finding that another home offers more economic or cultural advantages. *See In re C. and K.*, 322 N.W.2d 76, 81 (Iowa 1982).

■ The State's interest is clear as well. The State has an interest in protecting the health, safety and welfare of the children within its borders. *See Stanley v. Illinois*, 405 U.S. 645, 652, 92 S.Ct. 1208, 1213, 31 L.Ed.2d 551, 559 (1972); *In re A.T.*, 433 N.W.2d 64, 66 (Iowa 1988). As such, the parent's interest in maintaining the family unit is not absolute and may be forfeited by certain parental conduct. *See id. See also In re N.H. & C.H.*, 383 N.W.2d 570, 574 (Iowa 1986) (citing *In re Wall*, 295 N.W.2d 455, 457 (Iowa 1980)). To abrogate the parent's protected interest, the State must meet the requirements of the fourteenth amendment due process clause. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599, 606 (1982). The State must show by clear and convincing evidence that the parent has forfeited his or her interest. *See, generally, id.;* Iowa. Code § 232.116(1) (1991).

■ Under the Iowa termination of parental rights statute, the court is first instructed, by section 232.116(1), to determine whether the parent has forfeited his or her protected interest. Only after making an affirmative finding on the first inquiry, does the court make subsequent decisions based solely upon its determination of the child's best interest. *See* Iowa Code § 232.116(2), (3) (1991). That is, once the court concludes that all of the criteria for termination of parental rights have been satisfied, the court must, still, make a determination as to whether termination would be in the child's best interest. *See, e.g., In re N.H. & C.H.*, 383 N.W.2d at 574.

Therefore, by directing the court to decide whether it is in the best interest of the

child to maintain the parent-child relationship despite past neglect or abuse, the termination statute provides the "best interest" analysis only as an added safeguard against a mechanical approach to termination decisions. In the court's termination analysis, subsection 232.116(2) serves as a supplement to, rather than a substitute or alternative to, subsection 232.116(1).

Appellant, however, challenges the statute's direction that the court receive evidence relating to the foster family relationship before the court decides whether clear and convincing evidence exists to support termination. Appellant contends that judges are unable to ignore the evidence pertaining to the foster family relationship when examining the evidence of abuse or neglect. Accordingly, Appellant suggests that the termination proceeding should be bifurcated along the two issues. We find no merit in Appellant's challenge.

We find no unusual risk of error. The statute simply asks the juvenile court to answer one question before answering another, although the court receives information relevant to each question before it answers either. Implicit within the statute is the legislative determination that the juvenile court is capable of putting aside his or her personal beliefs, biases and emotions to the degree necessary to separate the two delineated functions. We find no reason to believe the legislature was incorrect in its assumption. After all, in essence, the legislature assumed nothing more than that the judge would do his or her job. Therefore, we do not believe the risk of error in this context renders the statute facially unconstitutional as a deprivation of a parent's procedural due process rights.

█ Nor do we believe that the statute is unconstitutional as applied to Appellant in the instant case. The juvenile court made the determination that all of the section 232.116(1)(c) and (g) criteria had been satisfied by clear and convincing evidence. As such, the court had found that T.R. could not be returned to the custody of his parents without immediately becoming, once again, a child in need of assistance. *See*

Iowa Code §§ 232.116(1)(c), (g), 232.102 (1989). This finding satisfies the due process rights of the Appellant. On our de novo review, we find the juvenile court properly terminated Appellant's parental rights to, and relationship with, T.R.

The costs of this appeal are taxed to appellant.

For all the reasons stated, the judgment of the juvenile court is affirmed.

AFFIRMED.