675 N.W.2d 28 (2004)
In the Interest of J.O., Minor Child,
M.O., Father, Appellant,
A.C., Mother, Appellant.
No. 03-1599.
Court of Appeals of Iowa.
January 14, 2004.
Ordered Published February 19, 2004.
*29 William C. Glass, Keosauqua, for appellant-father.
Myron Gookin of Foss, Kuiken, Gookin & Cochran, P.C., Fairfield, for appellant-mother.
Thomas J. Miller, Attorney General, Tabitha Gardner, Assistant Attorney General, Tim W. Dille, County Attorney, and Patrick J. McAvan, Assistant County Attorney, for appellee-State.
Benny Waggoner, Fairfield, and Kenneth Ketterhagen, Fairfield, guardians ad litem for minor child.
Considered by SACKETT, C.J., and MAHAN and EISENHAUER, JJ., but decided en banc.
EISENHAUER, J.
A mother and father appeal from the juvenile court order terminating their parental rights to their son under Iowa Code section 232.116(1)(h) (2003). The mother claims her son was not removed from her "physical custody" for the requisite period of time. The father contends termination was not appropriate because he had "made progress" and because his son had not been removed from the mother's physical custody for the requisite period of time. We review these claims de novo. In re C.H., 652 N.W.2d 144, 147 (Iowa 2002).
Jaden, born in November 2001, is the son of April and Matthew. Jaden and April lived with her mother, Leah, in Leah's apartment. Jaden came to the attention of the Department of Human Services (DHS) in February 2002 based on allegations Matthew had thrown Jaden into a chair during an altercation with April. Jaden was removed by ex parte order on April 10, 2002, because April allowed Matthew back into the apartment in violation of a no contact order. Jaden was found to be a child in need of assistance as defined in sections 232.2(6)(b) and 232.2(6)(c)(2) (2001) on April 17, and placed with Leah. April continued to live in the apartment with Leah and Jaden until early June 2003, despite a case permanency plan requirement that she obtain independent housing.
On April 9, 2003 DHS petitioned to terminate April and Matthew's parental rights under Iowa Code section 232.116(1)(h) (2003). The petition alleged, among other things, that Jaden had been removed from his parents' physical custody for at least six of the preceding twelve months. A hearing on the petition to terminate was to be held on May 21, 2003, at which time all parties appeared and an agreement was reached to postpone the hearing for ninety days. On June 3, 2003, following the hearing May 21 agreement, April left her mother's home and moved in with friends. She applied for low income housing and was put on a waiting list. April and Matthew were given only supervised visitation with Jaden. Following a hearing on August 20, the juvenile court *30 terminated April and Matthew's parental rights under Iowa Code section 232.116(1)(h).
We first address April and Matthew's contention Jaden was not out of April's physical custody for the required six months because, although he was placed in Leah's legal custody, April lived in the same household as Leah and Jaden until two and a half months prior to the termination hearing. April contends that during that time she assumed substantial care of Jaden including caring for the child while Leah worked.
The statutory time period specified in section 232.116(1)(h)(3) begins to run on the date custody is transferred and continues to run until the date of the termination hearing. See In re A.M.S., 419 N.W.2d 723, 725 (Iowa 1988). When a child has been removed pursuant to section 232.78 or 232.79, a parent has a definite period of time to remedy the problems which led to the removal so the child can be safely returned. See, e.g., Iowa Code §§ 232.116(e) (six months), (f) (twelve months), & (h) (six months). The juvenile court makes a decision that a child cannot safely reside with a parent. Iowa Code § 232.95. The case is then reviewed periodically to determine if the child may be returned to the parent. Iowa Code § 232.103. Here, Jaden was placed in the custody of his grandmother and has remained there since April 2002. When Jaden was adjudicated to be a child in need of assistance on April 17, 2002, the mother consented to his continued placement with her mother. The court found there would be an imminent risk to the child's life or health if allowed to be in the custody of his mother. In the disposition order dated May 15, 2002, the court again found there would be an imminent risk to Jaden's life or health if allowed to be in his mother's custody. A permanency hearing was held on October 9, 2002. The parties stipulated to continued placement with the grandmother. The court adopted the "strategies and responsibilities" in the case plan as what was expected to determine if the child could be returned to the custody of his mother. A permanency review hearing was held on May 21, 2003.
The removal cannot be circumvented extrajudicially. No amount of contact with the child rises to the level of physical or legal custody without a judicial determination and an order returning the child to the parent. On May 21, 2003, when the case was continued for ninety days to give the parents the opportunity to show they could live independently and have custody of the child, the court said to the mother,
I do want to express to the parents that, in actuality, this child being the age that the child is, the State could have moved for termination of parental rights after the child has been removed for six months. If the other requirements of the statute are met, the length of time out of home for a child who's the age of Jaden only needs to be six months. There are certainly other factors that need to be met as well, but that one factor of being out of the home six months would meet that, and, in actuality, Jaden's been out of the home, out of parental custody-I understand, April, you've been living with your mother and your mother's had custody of Jaden-but actually been out of custody of a parent for thirteen months.
It is unnecessary to interpret the distinction between physical and legal custody because in this context they are identical. Under no interpretation could April be said to have legal or physical custody of Jaden after the court removed him from her custody. Because Jaden had been removed from his mother's custody and placed with Leah for more than six *31 months, we affirm the termination on this ground. The trial court concluded termination is in the child's best interest and the mother does not challenge this conclusion.
Matthew contends termination of his parental rights was inappropriate because he had "made progress." After Jaden's removal in April 2002, Matthew did not begin visitation until May 2003 because he had not completed a batterer's education program and had been incarcerated. Matthew was inconsistent in attending visits and did not always interact with Jaden. Matthew did not regularly attend mental health appointments. At the time of the termination, he had no suitable home where Jaden could be placed and no timetable for when he could secure an appropriate home. While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. In re C.B., 611 N.W.2d 489, 494 (Iowa 2000). Children should not be forced to endlessly await the maturity of a natural parent. Id. At some point, the rights and needs of the child rise above the rights and needs of the parent. In re J.L.W., 570 N.W.2d 778, 781 (Iowa Ct.App. 1997). Clear and convincing evidence supports termination of Matthew's parental rights.
AFFIRMED.
HUITINK, J., and MAHAN and EISENHAUER, JJ., concur; MILLER, J., and ZIMMER and VOGEL, JJ., concur specially.
SACKETT, C.J., and HECHT and VAITHESWARAN, JJ., dissent.
MILLER, J. (concurs specially).
I concur in the majority opinion, but write separately to note additional reasons supporting the result reached on the mother's appeal.
Where, as here, a juvenile court order has transferred legal custody of a child from parents and placed that legal custody with a different individual or entity the juvenile court order controls the relationships of the individuals and entities involved in the proceeding and physical custody should be seen as part of legal custody unless otherwise determined pursuant to the terms of that order. One example of physical custody being separated from legal custody would be a case in which the order transfers legal custody to the DHS for placement in foster family care or for another appropriate placement and the DHS makes such a specified placement. That is not the situation here, as the juvenile court did not specify any placement other than with Leah.
Further, if April can validly claim that she maintained physical custody of Jaden under the facts of this case, she would be able to maintain such a claim even if her contacts with and care of Jaden had been in violation of an order prohibiting her from having contact with Jaden, such as a juvenile court no-contact order, criminal court no-contact order, or domestic abuse protection order. Such a result surely cannot be contemplated by the applicable statutes.
In addition, it would seem that in order for April to have "physical custody" of Jaden she must have his "custody." The term "custodian" is defined for purposes of Iowa Code chapter 232, pursuant to which these proceedings involving Jaden were brought. That definition provides:
"Custodian" means a stepparent or a relative within the fourth degree of consanguinity to a child who has assumed responsibility for that child, a person who has accepted a release of custody pursuant to division IV, or a person *32 appointed by a court or juvenile court having jurisdiction over a child. The rights and duties of a custodian with respect to a child are as follows:
a. To maintain or transfer to another the physical possession of that child.
b. To protect, train, and discipline that child.
c. To provide food, clothing, housing, and medical care for that child.
d. To consent to emergency medical care, including surgery.
e. To sign a release of medical information to a health professional.
All rights and duties of a custodian shall be subject to any residual rights and duties remaining in a parent or guardian.
Iowa Code § 232.2(11) (2003). Under the facts of this case the only part of the definition of a "custodian" within which April could arguably fit would be "a relative within the fourth degree of consanguinity who has assumed responsibility for [Jaden]." However, for two reasons I do not believe she "assumed responsibility for" him within the meaning of the statute. First, the juvenile court in fact removed full responsibility for Jaden's care from April and placed it with Leah. Second, although April (together with her grandmother) apparently provided daycare for Jaden, if by providing a child's daycare a person becomes a "custodian" of the child, a child's daycare provider becomes a necessary party to a termination of parental rights case involving the child, entitled to notice and an opportunity to be heard. See Iowa Code §§ 232.112(1) (stating persons listed in section 232.111(4) shall be necessary parties, entitled to notice and an opportunity to be heard) and 232.111(4)(b)(3) (stating a petition for termination of parental rights shall include the names of any custodian of the child). I do not believe the legislature intended that a child's daycare provider be a necessary party to a proceeding to terminate the parental rights of the child's parent or parents.
Finally, the last unlettered paragraph of section 232.2(11) distinguishes a "custodian" from a "parent" by providing that the rights and duties a custodian shall be subject to any residual rights and duties remaining in a parent. This clearly implies that when a court has removed legal custody of a child from a parent that parent is not a "custodian" unless appointed as a custodian as provided in the first unlettered paragraph of section 232.2(11). That did not occur in this case.
VOGEL and ZIMMER, JJ., join this special concurrence.
SACKETT, C.J. (dissenting).
The majority concludes "[i]t is unnecessary to interpret the distinction between physical and legal custody because in this context they are identical," and "[n]o amount of contact with the child rises to the level of physical or legal custody without a judicial determination...." I must disagree because I believe the majority misapplies the statute by failing to examine the language chosen by our legislature.
The record shows that the legal custody of Jaden was placed with Leah in April of 2002. The issue is whether Jaden's "physical" custody was removed from April for the required period necessary to terminate under section 232.116(1)(h)(3).
"Physical custody" is not defined in Iowa Code chapter 232. The question is, what do the words "physical custody" mean in the applicable statute? The primary goal in interpreting a statute is to ascertain the enacting body's intent. State v. Casey's Gen. Stores, Inc., 587 N.W.2d 599, 601 (Iowa 1998). To determine legislative intent, we not only look to the language of *33 the statute, but the objects sought to be accomplished, the purpose served, the underlying policies, the remedies, and the consequences of the various interpretations. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp., 606 N.W.2d 359, 364 (Iowa 2000). Once we have determined the legislature's intent, we interpret the statute so as to give effect to the purpose underlying the legislation. Top of Iowa Co-op. v. Sime Farms, Inc., 608 N.W.2d 454, 460 (Iowa 2000). We will seek a reasonable interpretation which will best effect the purpose of the statute and avoid absurd results. In re N.H., 383 N.W.2d 570, 572 (Iowa 1986); In re M.L.W., 461 N.W.2d 609, 613 (Iowa Ct.App.1990).
In enacting chapter 232 the legislature enunciated the purposes of the chapter in providing it "shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in the child's own home, the care, guidance, and control that will best serve the child's welfare and the best interest of the State." Iowa Code § 232.1; In re N.M., 491 N.W.2d 153, 155 (Iowa 1992).
While section 232 does not define "physical custody" the legislature did provide a definition of "custodian" in chapter 232:
"Custodian" means a stepparent or a relative within the fourth degree of consanguinity to a child who has assumed responsibility for that child.... The rights and duties of a custodian with respect to a child are as follows:
a. To maintain or transfer to another the physical possession of that child.
b. To protect, train, and discipline that child.
c. To provide food, clothing, housing, and medical care for that child.
d. To consent to emergency medical care, including surgery.
e. To sign a release of medical information to a health professional.
All rights and duties of a custodian shall be subject to any residual rights and duties remaining in a parent or guardian.
Iowa Code § 232.2(11). This definition includes rights and duties commonly held by one who has custody of children. See Black's Law Dictionary, 385 (6th ed.1990) (defining "custody of children" as the care, control, and maintenance of a child).
The code section dealing with issues of children and their families may provide some guidance. When statutes relate to the same subject matter or to closely allied subjects, they are said to be in pari materia and must be construed, considered, and examined in light of their common purpose and intent. Farmers Co-op. Co. v. DeKoster, 528 N.W.2d 536, 538 (Iowa 1995).
In chapter 598, pertaining to dissolution of marriage and domestic relations, the legislature has defined "legal custody" as:
[A]n award of the rights of legal custody of a minor child to a parent under which a parent has legal custodial rights and responsibilities toward the child. Rights and responsibilities of legal custody include, but are not limited to, decision making affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.
Iowa Code § 598.1(5).
In the same section, "physical care" is defined as "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." See Iowa Code § 598.1(6). Although these definitions are not found in chapter 232, I believe they are instructive in our analysis of the issue before the court.
If the legislature had intended termination of parental rights under section *34 232.116(1)(h)(3) to hinge upon removal of legal custody, it could have used the term "legal custody" in that section as it did in section 232.102(1). The legislature chose instead to specify termination is based upon the time during which a parent is dispossessed of "physical custody." I can only conclude the legislature intended the concept of "physical custody" to be distinct from "legal custody." My conclusion is buttressed by the principle statutes are not construed in such a way as to render words superfluous. Vivian v. Madison, 601 N.W.2d 872, 878 (Iowa 1999). We are guided by what the legislature actually said, rather than what it could or should have said. Marcus v. Young, 538 N.W.2d 285, 289 (Iowa 1995); State v. Hatter, 414 N.W.2d 333, 337 (Iowa 1987). I conclude the legislature's choice of the term "physical custody" in section 232.116(1)(h)(3) indicates an intent that in order for the court to terminate parents' rights pursuant to the section, the child must not merely be under the legal control of another person, but also under the physical control of a person or agency who is not the child's parent for the requisite period of time.
I conclude one who has physical custody under section 232.116(1)(h)(3) exercises physical possession, care, control, and responsibility over a child. A physical custodian performs regular caretaking duties while residing with the child including, but not limited to, those duties listed in sections 232.2(11)(a), (b), and (c). This definition of "physical custody" is consistent with the spirit of other language of section 232.116(1)(h)(3) allowing termination only if "any trial period in the home has been less than thirty days." Such a definition comports with a policy determination made by the legislature that a parent's rights should not be terminated if he or she has lived with and provided substantial parental care for the child during the relevant statutory period.
Having so determined, we need to examine the evidence to see if the State has proved by clear and convincing evidence that April did not exercise physical custody over Jaden until June 2, 2003.
April lived in the same apartment with Jaden and the record would show he slept in a bed in her room. Her mother worked outside the home and April accepted responsibility for him during that time even though her grandmother was in the home. April worked with parenting classes, and without question read and spoke of parenting problems. Her relationship with her child was good. She was attentive to his head problems and involved in his hospitalization and surgery. Jaden was healthy and well-fed. There were complaints that April was a late riser and her mother more frequently got Jaden up in the morning. Some evidence also indicated April was heard to yell at her son and she on occasion used slapping for discipline. However, the finding that Jaden was a child in need of assistance was not based on a finding that April either failed to adequately care for him or abused him in any way. April had substantial involvement with Jaden's health and well being during the time she lived with him in Leah's home. She assumed responsibility for him. While her mother and grandmother may have assisted with the child caring responsibilities, that alone is insufficient to prove by clear and convincing evidence that he was out of her "physical custody" for the required time.
The statutory time period specified in section 232.116(1)(h)(3) begins to run on the date custody is transferred and continues to run until the date of the termination hearing. See In re A.M.S., 419 N.W.2d 723, 725 (Iowa 1988). The record is clear Jaden lived with his mother, April, until June 2, 2003. The termination hearing *35 was held on August 20, 2003, less than three months later.[1]
The termination should be reversed.
HECHT and VAITHESWARAN, JJ., join this dissent.
NOTES
[1] The petition to terminate was filed before April left the home.